**Lemuel CANNON, Jr., Individually and as Temporary Administrator of the Estate of Lema Cannon, Deceased, Ronald Cannon, Patsy Griffin and Judy Hyles, Plaintiffs-Appellants,**

v.

**Martin TAYLOR and Columbus, Georgia, Defendants-Appellees.**

No. 83–8856.

United States Court of Appeals, Eleventh Circuit.

Feb. 20, 1986.

Douglas L. Breault, Columbus, Ga., for plaintiffs-appellants.

John W. Denney, Kathelen M. VanBlarcum, Columbus, Ga., for defendants-appellees.

Before RONEY and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

RONEY, Circuit Judge:

Lema Cannon was killed when a police vehicle driven by Officer Martin Taylor struck her automobile. Her personal representative and surviving children brought this 42 U.S.C.A. § 1983 action against Officer Taylor and the City of Columbus, Georgia, claiming the defendants deprived Mrs. Cannon of life without due process of law and violated her constitutional right to travel. The district court granted summary judgment for defendants, finding that no constitutional violation had occurred. The case was orally argued on September 20, 1984, but the decision was delayed pending *en banc* consideration of a case first reported as *Gilmere v. City of Atlanta*, 737 F.2d 894 (11th Cir.1984), because it contained issues possibly relevant to consideration of this case. The *en banc* Court in *Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir.1985) (*en banc*), has now held that the Supreme Court decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), does not preclude a section 1983 suit against police officers for physical injuries just because the plaintiff would have a cause of action under state law. *Gilmere* and the other precedents having been fully considered by this Court, we affirm the denial of a section 1983 cause of action in this case. We hold that there is no section 1983 cause of action for injuries received in an automobile accident involving the negligence of city police.

At the time of the accident, Officer Taylor was responding to a disturbance call at a local pool hall in Columbus. The street on which he was travelling had a 30 miles-per-hour speed limit. Apparently concerned for the safety of the first officer to reach the scene, Taylor increased his speed to what investigative officers later determined to be at least 46 miles-per-hour. Georgia law provides that police vehicles may exceed posted speed limits when responding to emergency calls, but only if the officer uses the vehicle's flashing lights and siren. O.C.G.A. § 40-6-6. Taylor was using neither. He struck the left side of Mrs. Cannon's automobile as she was crossing an intersection. Plaintiffs sued, asserting a cause of action against both Officer Taylor and the City.

## OFFICER TAYLOR

As to Officer Taylor, plaintiffs alleged that, acting under color of state law, he deprived Mrs. Cannon of her life with-

out due process of law by virtue of his reckless, excessive speeding without the use of lights and sirens.

In order to sustain a 1983 action, a plaintiff must make a *prima facie* showing that the act or omission of a person acting under color of state law deprived plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Section 1983 is not self-executing; the statute itself creates no substantive rights. Although the right to life is an interest of constitutional dimension, not every deprivation of life amounts to a constitutional violation and gives rise to a claim under section 1983. *Dollar v. Haralson County*, 704 F.2d 1540, 1543 (11th Cir.), *cert. denied*, 464 U.S. 963, 104 S.Ct. 399, 78 L.Ed.2d 341 (1983). The Fourteenth Amendment protects against only those deprivations of life which are effected without due process of law. *See also Screws v. United States*, 325 U.S. 91, 108–09, 65 S.Ct. 1031, 1038–39, 89 L.Ed. 1495 (1945) ("The fact that a prisoner is assaulted, injured, or even murdered by state officials does not necessarily mean that he is deprived of any right protected or secured by the Constitution or laws of the United States.").

The death occurred in an automobile accident, allegedly caused by the negligence of a police officer driving a city vehicle in the course of duties. No cases have been cited to this Court which held that automobile negligence by a state officer deprives an injured victim of due process of law. Our own computer research has revealed no decision that a victim of automobile negligence has a section 1983 cause of action for injuries caused by that negligence.

Observations of the United States Supreme Court indicate there is no such cause of action. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Court expressed concern with a suggested reading of section 1983 which would make the Fourteenth Amendment "a font of tort law to be superimposed upon whatever systems may already be administered by the

States." *Id.* at 701, 96 S.Ct. at 1160. Elaborating on these concerns, the *Paul* Court stated that if respondent's view there would prevail, which it did not,

> ... it would be difficult to see why the survivors of an innocent bystander ... negligently killed by a sheriff driving a government vehicle, would not have claims equally cognizable under § 1983.

> It is hard to perceive any logical stopping place to such a line of reasoning. Respondent's construction would seem almost necessarily to result in every legally cognizable injury which may have been inflicted by a state official acting under 'color of law' establishing a violation of the Fourteenth Amendment. We think it would come as a great surprise to those who drafted and shepherded the adoption of that Amendment to learn that it worked such a result, and a study of our decisions convinces us they do not support the construction urged by respondent.

*Id.* at 698–99, 96 S.Ct. at 1159. The Court rejected the premise that the Due Process Clause of the Fourteenth Amendment and section 1983 "make actionable many wrongs inflicted by government employees which had heretofore been thought to give rise only to state-law tort claims." *Id.* at 699, 96 S.Ct. at 1159.

In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court repeated its concern noted five years earlier in *Paul v. Davis*, rejecting a claim that the negligent deprivation of certain property amounted to a constitutional violation actionable under section 1983. The Court summarized its rationale in its closing passage:

> To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping

place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.' *Paul v. Davis,* 424 U.S. 693, 701 [96 S.Ct. 1155, 1160, 47 L.Ed.2d 405] (1976). We do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society.

*Id.* at 544, 101 S.Ct. at 1917.

█ In view of these strong observations from the United States Supreme Court, and a complete absence of contrary authority, we hold that a person injured in an automobile accident caused by the negligent, or even grossly negligent, operation of a motor vehicle by a policeman acting in the line of duty has no section 1983 cause of action for violation of a federal right. The type of negligence alleged in this case may well be actionable under state law. Automobile negligence actions are grist for the state law mill. But they do not rise to the level of a constitutional deprivation. *See Walton v. Salter,* 547 F.2d 824 (5th Cir.1976) (pedestrian struck and killed by police car responding to call of armed robbery in progress; actions of officer which were negligent and in willful and wanton disregard for the safety of others do not state a claim under section 1983).

### CITY OF COLUMBUS

█ As to the City of Columbus, plaintiff alleged a due process violation based on the allegations that the City, by policy, authorized police officers to drive their vehicles at excessive speeds without operating their siren or flashing lights, and that the City failed to properly train its officers in the operation of police vehicles. Plaintiffs claim that these policies subject the City to section 1983 liability under the teachings of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018,

56 L.Ed.2d 611 (1978), and its progeny. In *Monell,* the Supreme Court rejected the suggestion that a municipality had section 1983 liability under a *respondeat superior* theory, but held that it would be liable for a policy that causes a citizen to be subjected to a deprivation of a constitutional right. *Grandstaff v. City of Borger,* 767 F.2d 161, 169 (5th Cir.1985). The policy may be a governmental "custom" which has not received formal approval through the official decisionmaking channel. A custom is a practice so settled and permanent that it takes on the force of law. *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36.

At the time of the incident involving Mrs. Cannon, the City's formal written policy regarding operation of emergency vehicles and use of lights and sirens was identical to O.C.G.A. § 40–6–6. No written state law or written City policy or standard permitted police officers to speed without using their lights and siren.

In granting the City's motion for summary judgment, the district court considered the allegations in the pleadings along with the depositions and affidavits which had been filed with the court. The district court found that "there is nothing in the evidence to indicate that the City of Columbus had an official rule, policy or regulation as alleged by the Plaintiffs" but did not elaborate on the basis for its finding.

Having independently reviewed the affidavits and depositions presented in the district court, this Court believes that the most the jury could have found had the case gone to trial was that City officials in policymaking positions took no affirmative measures to respond to certain instances of violation of the state statute. This conclusion is based primarily on the depositions of Police Chief Wetherington and Assistant Police Chief Woodall. The testimony, viewed most favorably to the plaintiffs, would support a finding that the officials did nothing to discipline the officer unless his actions created a danger to life or property. The department did not authorize violations of the law, but it "accepted" those violations depending on the type of

call and whether life was in danger; "there was nothing officially done about it or officially wrong with it." The testimony would allow a finding that officers generally were not disciplined unless the violation resulted in an accident, and that whether the officer was disciplined would depend on the particular circumstances of the case, including whether the officer was at fault, the type of call the officer was answering, and the traffic and safety conditions. Chief Wetherington thought that Taylor had violated departmental policy and state law, and for that reason Taylor was charged with vehicular homicide.

The testimony does not show the officials ever authorized officers to violate the law, and particularly could not support any inference that the officials maintained a policy directing that emergency equipment not be used when responding to calls. Officer Taylor testified that no one in the department ever gave him discretion to violate state law. Taylor testified that his understanding that he had discretion whether to use his lights and siren was based on his reading of "state code books."

In *Turpin v. Mailet*, 619 F.2d 196 (2d Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980), the Second Circuit discussed standards for when federal courts may impose section 1983 municipal liability for a "policy" of failure to take remedial steps to correct constitutionally offensive acts by municipal employees. The Second Circuit concluded that the failure to take remedial steps must amount to deliberate indifference or tacit authorization of the offensive acts. *Id.* at 201.

The record here lacks evidence which would allow a finding that city officials disregarded instances of officer misconduct which threatened or deprived the rights of city residents. There is some evidence that there had been previous instances involving speeding without the use of lights and sirens, although it does not reveal whether these instances were the cause of any accidents, or the extent of injuries or damages involved. To say that officials took no action to correct certain violations of state law is far from saying that those officials

were deliberately indifferent or grossly negligent in respecting citizens' rights or tacitly authorized constitutionally offensive conduct. Simple failure to correct violations of state law does not equate to an indifference to constitutional rights.

Nor is the evidence sufficient to establish an actionable policy of inadequate training in the operation of police vehicles in excess of the speed limit. It is clear from this Court's precedents that at least a showing of gross negligence will be necessary to establish liability for inadequate training. *See Reeves v. City of Jackson*, 608 F.2d 644, 652 (5th Cir.1979) ("nothing was shown to establish that the City was reckless or grossly negligent in its training").

The testimony and documentary evidence reveals that Officer Taylor received the standard police academy training on operating his vehicle and on applicable state laws. Additionally, the state law on operating police vehicles over the speed limit was reproduced in the Columbus police manual. This Court is unwilling to say that this training procedure is so inherently inadequate as to subject the City to liability in the absence of past officer misconduct resulting from lack of training. *See Languirand v. Hayden*, 717 F.2d 220, 227–28 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984) ("a municipality is not liable under section 1983 for the negligence or gross negligence of its subordinate officials, including its chief of police, in failing to train the particular officer in question, in the absence of evidence at least of a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force"). The evidence is insufficient to show a training deficiency transgressing constitutional boundaries.

AFFIRMED.