Mary Lee BROWN, etc., Plaintiff,

v.

The CITY OF ELBA, and Michael Patrick, etc., Defendants.

Civ. A. No. 90–T–111–S.

United States District Court,
M.D. Alabama, S.D.

Sept. 11, 1990.

Kearney Dee Hutsler, III, Birmingham, Ala., for plaintiff.

Mark Vaughan, Cannon & Vaughan, Elba, Ala., for defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Mary Lee Brown has brought this lawsuit charging that defendants Michael Patrick and the City of Elba, Alabama deprived Janet Lockett of life without due process of law, in violation of the fourteenth amendment to the United States Constitution as enforced through 42 U.S.C.A. § 1983. Brown is the mother and administratrix of the estate of Lockett. Brown has invoked the court's jurisdiction pursuant to 28 U.S.C.A. § 1343.

This cause is now before the court on a motion for summary judgment filed by the City of Elba. For the reasons that follow, the court concludes that the motion should be granted.[1]

### I.

The facts in this case are simple and straightforward. On September 4, 1989, Officer Michael Patrick of the Elba Police Department transported Randy Walton to the home of the parents of Janet Lockett, Walton's common-law wife. Walton and Lockett had had a domestic dispute earlier in the day. Officer Patrick allowed Walton to sit in the front seat of the patrol car. When they arrived at the home, Walton

---

1. Patrick has not filed a motion for summary judgment. However, because the prerequisites for establishing municipal liability apply equally to a suit against a municipal official in his official capacity, see Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), the court's decision granting the city's motion for summary judgment necessarily also indicates that the case against Patrick in his official capacity is without merit.

struck Officer Patrick and seized his revolver. Walton then ran into the home where he shot and killed his wife and then himself. Lockett's mother, Mary Lee Brown, later filed this lawsuit against Officer Patrick and the City of Elba, claiming that the defendants deprived Lockett of her life without due process of law. Brown alleges that Officer Patrick was grossly negligent in bringing Walton and Lockett together and in allowing Walton to ride in the front seat of the patrol car and thereby commandeer his revolver.

The City of Elba has moved for summary judgment. Evidence submitted by the city indicates that neither it nor its police department had any definite policy with regard to whether civilians not under arrest may ride in the front seat of police cars, how police officers should protect their weapons, or how they should handle domestic disturbances.[2] Brown has offered evidence that in the past Elba police officers have allowed citizens not under arrest to ride in the front seats of police cars.[3] However, the record presently before the court does not indicate whether these practices or "non-policies" have in the past resulted in injuries or constitutional violations and, if so, whether any such incidents were brought to the attention of city officials.

## II.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." This standard can be met, in a case in which the ultimate burden of persuasion at trial rests on the nonmoving party, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmoving party's evidence itself is insufficient to establish an essential element of her claim. The moving party may make this showing by deposing the nonmoving party's witness, by establishing the inadequacy of the documentary evidence or, if there is no evidence, by reviewing for the court the facts that exist to show why they do not support a judgment for the nonmoving party. The movant need not present affidavits or new evidence of its own to meet its initial burden, but may premise its summary judgment motion on an attack on the opponent's evidence; once that is done, the burden shifts to the nonmoving party to call evidence to the attention of the court to dispute that contention. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); C. Wright, A. Miller, & M. Kane, 10A Federal Practice and Procedure § 2727, 1990 Pocket Part, pp. 27–28.

The City of Elba argues that it is entitled to summary judgment because the evidence does not support a claim against it. The court agrees with Elba for several reasons.

### A.

To establish a civil rights claim under § 1983, a plaintiff must demonstrate that the defendant, "under color of state law, deprived the plaintiff of a right secured by the Constitution and laws of the United States. Section 1983 alone creates no substantive rights; rather it provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws."[4] *Cornelius v. Town of Highland Lake, Alabama*, 880 F.2d 348, 352

---

**2.** *See* Affidavits of Elba Police Chief Freddy Hanchey and City Clerk Pat Boothe (attached to Defendant City of Elba's Brief in Support of Summary Judgment); Answers to Interrogatories to City of Elba, at 2 (attached to Plaintiff's Response to Motion for Summary Judgment of City of Elba).

**3.** *See* Affidavit of Charlene Lockett (attached to Supplement to Plaintiff's Response to Motion for Summary Judgment of City of Elba).

**4.** 42 U.S.C.A. § 1983, in relevant part, provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges,.or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(11th Cir.1989) (citations omitted), *cert. denied,* —— U.S. ——, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). Brown has alleged that Patrick and the City of Elba deprived Lockett of life without due process of law, in violation of the fourteenth amendment. However, the fourteenth amendment protects citizens only from deprivation of life by the *state* without due process of law; Walton was not an officer of the state or the City of Elba, and cannot be said to have killed Lockett under color of state law. *See DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 201, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989).

Brown's claim against the City of Elba must therefore rest on some notion that Patrick was at fault because he had a duty toward Lockett to protect her from Walton.[5] It is now well established that the state and its officials cannot be liable for simply failing, negligently or otherwise, to take affirmative measures to protect an individual. *DeShaney,* 489 U.S. at 195, 109 S.Ct. at 1003; *Cornelius,* 880 F.2d at 353. There is no constitutional deprivation where, despite the state's awareness of the dangers facing a person, the state "played no part in their creation, nor did it do anything to render him any more vulnerable to them." *DeShaney,* 489 U.S. at 201, 109 S.Ct. at 1006.[6] As described by the Supreme Court, the state is obligated by the due process clause, not to act as the "guarantor of an individual's safety," but rather simply to "place[ ] him in no worse position than that in which he would have

been had it not acted at all." *DeShaney,* 489 U.S. at 201, 109 S.Ct. at 1006.[7]

Even where the state has done more than simply fail to act, it may be held constitutionally responsible for the conduct of a third-party only where there is a "special relationship" between a victim and the third party or between a victim and government officials such as would create a duty on the part of government officials to act. *Cornelius,* 880 F.2d at 352–54.[8] For example, a plaintiff may demonstrate this relationship and the state's corresponding duty by "establishing that [she], as opposed to the general public, faced a special danger" from the third-party and that state officials were aware of this. *Id.* at 354.[9]

On the present record, it is a close question whether Patrick placed Lockett in a position of greater vulnerability or did any more than fail to protect her from Walton.[10] For the purposes of this motion, the court assumes that by bringing Walton and Lockett together and allowing Walton to seize his gun, Patrick "facilitated" Lockett's tragic death. However, even if Patrick's conduct can be said to have increased the risk of harm to Lockett, thus distinguishing this case from *DeShaney,* the facts now before the court do not indicate that Patrick was aware either that Walton had been violent toward Lockett in the past or that he intended to harm his wife that day, and that she therefore faced a special

---

**5.** Of course, if Patrick himself had shot Lockett, the legal issues presented would be quite different.

**6.** *Compare Cornelius,* 880 F.2d at 357 (state officials' actions "significantly increased both the risk of harm to the plaintiff, and the opportunity for the [third-parties] to commit the harm").

**7.** *See also Cornelius,* 880 F.2d at 354 ("Although . . . there is no constitutional right to be protected by the state against being murdered by criminals or madmen . . . if the state *puts* a man in a position of danger and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeaser as if it had thrown him into a snake pit")

(*quoting Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982)).

**8.** *See also Jones v. Phyfer,* 761 F.2d 642, 644–45 (11th Cir.1985).

**9.** *See also Wright v. City of Ozark,* 715 F.2d 1513, 1516 (11th Cir.1983).

**10.** *Compare with Cornelius,* 880 F.2d at 358 ("defendants here facilitated the kidnapping by providing [work release prisoners] with knives, saws, and machetes and by allowing them to roam freely around the town hall"), *and Nishiyama v. Dickson County, Tenn.,* 814 F.2d 277, 280–81 (6th Cir.1987) (state officers facilitated beating death of motorist by providing inmate unsupervised use of patrol car).

danger.[11] For this reason, Patrick cannot be held constitutionally responsible for Walton's violent conduct.

## B.

Even if Brown could establish that Patrick should have known Walton posed a particular threat to Lockett and that his actions left her more exposed to this danger, such evidence alone would still be insufficient to support a § 1983 challenge. The due process clause was intended to protect individuals from the abusive and arbitrary exercise of government power, and not from the mere accidental effects of lawful actions. *See Daniels v. Williams*, 474 U.S. 327, 333, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986). Thus, it is well established that mere negligence or lack of care on the part of state officials does not implicate the due process clause of the fourteenth amendment. *Id.*[12] In *Daniels*, the Supreme Court left open the possibility that "something less than intentional conduct, such as recklessness or 'gross negligence,' might be enough to trigger the protections of the Due Process Clause" in an action under § 1983.[13] 474 U.S. at 333 n. 3, 106 S.Ct. at 666 n. 3. However, this court need not explore this issue because Brown's evidence establishes, at best, that Patrick was guilty of only ordinary negligence. The facts before the court clearly do not indicate that Patrick should have known his conduct would likely lead to violence against Lockett, or even foreseen the possibility of such an extraordinary chain of events. Therefore the present record cannot support a finding of recklessness or gross negligence.[14]

## C.

Finally, even if Brown were able to satisfy the above requirements and thus show that Patrick had violated a duty toward Lockett under the due process clause, she cannot sustain a claim against the City of Elba under § 1983 simply on the basis that Patrick was employed by the City.[15] Brown must also establish that the city itself, through a government "policy or custom," caused the constitutional viola-

---

**11.** Brown contends there is evidence that Lockett and Walton "had a domestic dispute earlier that day" and that "Patrick was aware that the police had been called to assist the parties." Plaintiff's Response to Motion for Summary Judgment of City of Elba, p. 1. Moreover, the record reveals that Patrick and other Elba police officers knew of "frequent fights and domestic problems" between Lockett and Walton. Answers to Interrogatories to City of Elba, at 2 (attached to Plaintiff's Response to Motion for Summary Judgment of City of Elba). However, it appears that Walton, and not Lockett, had called the police the day of the killing, and that Patrick had escorted Walton back to the house where Lockett was staying because Walton planned to leave town and wished to gather his possessions. Answers to Interrogatories by Defendant, Michael Patrick, at 2 (attached to Plaintiff's Response to Motion for Summary Judgment of City of Elba). This evidence is insufficient to establish that Patrick was aware that Walton posed a danger to the life of his common-law wife.

**12.** *See also Cannon v. Taylor*, 782 F.2d 947, 950 (11th Cir.1986); *Wells v. Walker*, 852 F.2d 368, 371 (8th Cir.1988), *cert. denied*, 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989).

**13.** In *DeShaney*, the Supreme Court suggested that even if the plaintiff had been able to demonstrate that the conduct of state officials implicated a constitutional duty, he would still have had to establish that these officials acted with the "requisite 'state of mind' to make out a due process violation." 489 U.S. at 202 n. 10, 109 S.Ct. at 1007 n. 10.

**14.** Even the dissenters in the companion case to *Daniels, Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)—who would have reached the question reserved in *Daniels* and held that reckless or grossly negligent conduct could constitute a constitutional deprivation—indicated they would require a high degree of fault to satisfy this standard. For example, Justice Blackmun wrote:

[The defendants acted] in the face of a real and known possibility of violence.... [T]he risk that harm would occur was substantial and obvious. [The defendants'] behavior very well may have been sufficiently irresponsible to constitute reckless disregard of [the plaintiff's] safety.

*Davidson*, 474 U.S. at 357–58, 106 S.Ct. at 675 (Blackmun, J., dissenting) (citations omitted).

**15.** Brown acknowledges that municipal liability under § 1983 may not be imposed merely because a municipality employed the person responsible for the constitutional violation, but is triggered only when the injuries were inflicted pursuant to government "policy or custom." Plaintiff's Response to Motion for Summary Judgment of City of Elba, at 3.

tion.[16] *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Brown does seek to identify certain "policies" of the City of Elba and its police department in regard to (1) how domestic disputes should be handled, (2) whether police should allow civilians not under arrest to ride in the front seats of police cars, and (3) how police should protect their weapons from being seized. However, the requirements of *Monell* cannot be satisfied simply by showing that a policy for which the city is responsible was flawed or inadequate.[17] Rather, the policy must also represent " 'a deliberate choice to follow a course of action ... made from among various alternatives' by city policy makers." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 391, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1988) *quoting Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). This means that when, as in *Harris* and this case, the plaintiff challenges a city's policy of inaction or its failure to train officials, she must demonstrate that it "amount[ed] to deliberate indifference to

the rights of persons with whom the police come into contact." [18] *Harris,* 489 U.S. at 388, 109 S.Ct. at 1204. The evidence submitted by Brown does not satisfy the "deliberate indifference" standard for establishing municipal liability.

To prove deliberate indifference, a plaintiff must at least demonstrate that there existed "a strong likelihood, rather than a mere possibility," that an inadequate policy or training program would result in a constitutional violation. *Popham v. City of Talladega,* 908 F.2d 1561, 1563 (11th Cir.1990) (per curiam). *See Harris,* 489 U.S. at 389, 109 S.Ct. at 1205. The plaintiff must also show that city policy makers were aware or should have been aware of the need for different policy or training. *Id.* at 390 n. 10, 109 S.Ct. at 1205 n. 10. *See also, Popham,* 908 F.2d at 1563. Thus city officials may be found deliberately indifferent where (1) a policy or training program is, on its face, clearly inadequate and likely to give rise to constitutional violations—for example, a failure to "train officers in the constitution-

---

**16.** In *City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1988), the most recent and definitive Supreme Court decision on the issue of municipal liability, the plaintiff claimed she had not received necessary medical attention while detained in the city jail because of a city regulation granting police supervisors complete discretion over such decisions. In that case, the Supreme Court did not reach the issue of whether "custom," as opposed to "policy," is a "distinct basis for [municipal] liability under § 1983." However, the Court chose to treat the plaintiff's claim that the city had a "custom" of denying medical care or allowing it to be denied, as identical to her claim that the city's failure to train police amounted to a policy that resulted in the denial of medical care. *See* 489 U.S. at 386 n. 5, 109 S.Ct. at 1203 n. 5.

Therefore, although this section of the court's opinion refers alternatively to Brown's action as challenging a "policy," "inadequate policy," "custom," and "failure to train," the court uses all these simply as different characterizations of the same underlying claim, to be analyzed according to the "deliberate indifference" standard set forth in *Harris* and explained below.

**17.** In *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985), a plurality of the Supreme Court cautioned that "if one retreats far enough from a constitutional violation some municipal 'policy'

can be identified behind almost any ... harm inflicted by a municipal official." For example, as the *Tuttle* plurality explained, a victim could argue that his injuries resulted from the city's "policy" of establishing a police force. *Id.* Such arguments, if accepted, would render a "dead letter" *Monell's* requirement that the constitutional violation be caused by a municipal policy, because they would, in effect, allow municipal liability simply on the basis that the official responsible for the constitutional violation was a city employee. *Id.*

**18.** Municipal liability under § 1983, which in some cases can be premised on a city's policy of inaction, is not to be confused with the underlying constitutional violation, which requires a showing that a specific municipal actor did more than fail to protect the plaintiff from a third party. As the court discusses more fully in Part II(B) of this opinion, if a third-party has caused harm to the plaintiff, a municipal actor cannot be said to have deprived the plaintiff of her rights under the due process clause unless the official at least created or increased the danger which the third party posed to the plaintiff. Of course, if, as here, the plaintiff cannot demonstrate a constitutional violation by the municipal actor, she has no claim against the city, whether or not the city policy responsible for the actor's conduct manifests deliberate indifference.

al limits on the use of deadly force"; or (2), while not plainly deficient, a city policy or training program has in the past so often led to violations of constitutional rights similar to those claimed by the plaintiff that "the need for further training must have been plainly obvious to the city policy makers." *Harris*, 489 U.S. at 390 n. 10, 109 S.Ct. at 1205 n. 10.

The municipal policies which Brown challenges fall into neither of these two categories. Although the court finds disturbing the absence of any guidelines or training on the part of the Elba Police Department in regard to domestic disputes, it cannot conclude that such an approach is—like a failure to train police in the constitutional limits on the use of deadly force—so obviously likely to result in constitutional violations as to satisfy the deliberate indifference standard. Nor can the court say that the lack of a policy, either as to whether civilians may ride in the front seats of police cars or as to how police officers should protect their weapons, patently manifests such deliberate indifference toward the rights of its citizens.[19] Moreover, Brown has submitted no evidence that any of the challenged municipal policies has resulted in a single constitutional violation in the past such that Elba officials should have been aware of the need for corrective measures.[20]

Finally, Brown maintains that Elba may be held liable because the city took no action against Patrick after the incident; she argues that the city implicitly ratified Patrick's conduct. She relies on *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161 (5th Cir.1985), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). In that case, the Fifth Circuit found that a city could be liable under § 1983 for the reckless use of deadly force by its officers based on evidence that after the events "there were no reprimands, no discharges, and no admissions of error." *Id.* at 171. Whether *Grandstaff* was correctly decided is a close question, and whether it is still good law in light of the Supreme Court's decision in *Harris* is even more doubtful.[21] Moreover, in this case, the isolated action of Patrick which, at best, only indirectly resulted in Lockett's death, is a far cry from the egregious conduct in *Grandstaff* which involved several episodes and many officers. The *Grandstaff* court explained:

19. Brown's evidence leaves the court unpersuaded that Elba can be faulted at all for its "policies" with regard to civilians riding in the front seat of police cars and police officers protecting their weapons. It is far from clear that in non-emergency situations, police should be required to place in the locked back seat individuals who are not under arrest, such as, for example, a motorist who has run out of gas on the highway and sought assistance.

Moreover, the evidence shows that Patrick received "firearm safety training" while at the police academy. Answers to Interrogatories by Defendant Michael Patrick (attached to Plaintiff's Response to Motion for Summary Judgment of City of Elba). Although Brown complains that Patrick should have prevented Walton from seizing his revolver, she offers no evidence to show that the manner in which Patrick was trained and allowed to carry his revolver was different from the norm or unsafe.

20. Brown has produced evidence that, in the past, Elba police officers have allowed citizens not under arrest to ride in the front seat of patrol cars. However, there is no evidence that any of these past instances resulted in injuries which were brought to the attention of Elba officials who failed to take any corrective action; indeed, the record does not even indicate that Elba officials were aware that unarrested civilians were riding in the front seats of patrol cars. Such evidence cannot establish deliberate indifference under *Harris*. See *Cannon v. Taylor*, 782 F.2d 947, 951 (11th Cir.1986) (no deliberate indifference where city officials disregarded "previous instances involving [police] speeding without the use of lights and sirens," but where there was no indication "whether these instances were the cause of any accidents, or [of] the extent of injuries or damages involved"); *Languirand v. Hayden*, 717 F.2d 220, 227–28 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984) (no municipal liability "in the absence of evidence at least of a pattern of similar incidents in which citizens were injured or endangered ... and/or that serious incompetence or misbehavior was general and widespread throughout the police force").

21. The appellate panel was deeply divided on the municipal liability issue, with the dissent charging that the majority was "punishing the City, not for wrongfully or unconstitutionally bringing about this tragedy, but for its post-event callousness." *Grandstaff*, 767 F.2d at 173 (Garwood, J., dissenting).

The evidence does prove repeated acts of abuse on this night, by several officers in several episodes, tending to prove a disposition to disregard human life and safety so prevalent as to be police policy or custom. The entire six officers of the night shift of the City of Borger participated in this wild barrage....

*Id.* at 171. This evidence in conjunction with the absence of any punishment of these officers by the city led the court to its conclusion that the officers were acting pursuant to a city policy or practice. Brown has presented no similar evidence of extraordinary, continuous misconduct on the part of Elba police which resulted in the death of Lockett.

### III.

The court concludes that Brown has failed to satisfy the necessary standards for sustaining a claim of municipal liability under § 1983. Brown's claim against the City of Elba is, if anything, a state law claim of wrongful death which should be brought in state court. Her claim is not one of constitutional dimensions. The court will therefore enter summary judgment against Brown, but without prejudice to her right to bring a suit in state court based on state law against the City of Elba.

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That the motion for summary judgment filed by defendant City of Elba on May 17, 1990, be and it is hereby granted; and

(2) That said defendant be and it is hereby dismissed with prejudice, except as to any state law claims plaintiff Mary Lee Brown may have against it.