William ANDERSON, Jr., Plaintiff,

v.

CITY OF GLENWOOD, GEORGIA, and Dykes S. Hilliard, Defendants.

Civ. A. No. 394–055.

United States District Court,
S.D. Georgia,
Dublin Division.

May 12, 1995.

George Brian Spears, Atlanta, GA, John Edwin Morrison, Mt. Vernon, GA, for plaintiff.

Robert B. Hocutt, Michael D. Hostetter, Nall, Miller, Owens, Hocutt & Howard, Atlanta, GA, for defendants.

## ORDER

EDENFIELD, Chief Judge.

Plaintiff brought suit under 42 U.S.C. § 1983 and state law against Defendant Hilliard, a police officer. Plaintiff also sued Defendant City of Glenwood, in its capacity as employer of Hilliard, in tort and for failure to train or supervise its officers. The City now moves for summary judgment. For reasons discussed below, the Court grants the motion.

### I. Summary Judgment Standard

The purpose of summary judgment is to explore the evidence to determine whether there is a genuine issue of material fact requiring a trial. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment is granted when no such issue is discovered and the movant is entitled to judgment as a matter of law. *Great Lakes Dredge & Dock Co. v. Miller*, 957 F.2d 1575, 1578 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Summary judgment is appropriate only when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Tidmore Oil Co. v. BP Oil Co.*, 932 F.2d 1384, 1387–88 (11th Cir.), *cert. denied,* 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).

After the movant successfully discharges his initial burden of demonstrating a lack of material issues of fact, *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553, the burden shifts to the nonmovant to establish, with evidence beyond the pleadings, that there indeed exists an issue material to the nonmovant's case. *Thompson v. Metropolitan Multi-List, Inc.*, 934 F.2d 1566, 1583 n. 16 (11th Cir.1991). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmovant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Id.* at 257, 106 S.Ct. at 2514. If the nonmovant's response to the summary judgment motion consists of nothing more than conclusory allegations, the Court must enter summary judgment for the movant. *Peppers v. Coates,* 887 F.2d 1493, 1498 (11th Cir.1989). Where the parties' factual statements conflict or inferences are required, the Court will construe the facts in a light most favorable to the nonmovant. *Barnes v. Southwest Forest Industries,* 814 F.2d 607, 609 (11th Cir.1987).

### II. Facts

#### A. Background

On September 27, 1992, Defendant Hilliard saw a pickup truck, driven by Plaintiff Anderson, take off at high speed from a traffic light in Glenwood. Hilliard followed in his patrol car, flashing his blue lights as a signal to the truck to stop. The truck accelerated, however, and a chase ensued, headed west toward the City of Alamo on highway 280. During the chase, Hilliard radioed Jimmy Joines, an Alamo police officer, to provide backup. Plaintiff soon turned onto a dirt road with Hilliard in pursuit. The chase ended with both vehicles mired in a hog pen at the end of the road.

The parties dispute the events that followed. Anderson says he and Hilliard both exited their vehicles and Anderson walked

with Hilliard to the back of the truck. He says Hilliard then lost his balance in the mud and fell, grabbing onto Anderson and sending them both to the ground. Hilliard allegedly climbed on top of Anderson and shot him, apparently in retaliation for an extramarital affair between Anderson's stepbrother and Hilliard's wife.

Officer Hilliard's version is a bit different. He says that after both vehicles stopped, he exited his patrol car and approached the truck. As Hilliard walked to the passenger side of the truck, the passenger, Anderson's brother Maury, attempted to exit the vehicle and Hilliard stopped him. He ordered both occupants to put their hands on the dashboard. Neither Anderson nor Maury complied. Anderson then came out and moved to the rear of the vehicle, apparently with something hidden in his right hand. Hilliard backed up and Maury also exited the truck. His gun drawn, Hilliard ordered both men to put their hands on the truck, but they only began to inch toward him. As Hilliard backed up he slipped in the mud and was immediately tackled by Plaintiff Anderson, who began to beat him. Hilliard repeatedly ordered Anderson to desist, but to no avail. Hilliard eventually shot him.

### B. Police Training in Glenwood

■ This glaring factual discrepancy might prevent the Court from granting summary judgment to Hilliard, but it is irrelevant to a motion by his employer, the City of Glenwood. The City contends that no matter what happened in that hog pen, Hilliard was properly trained and supervised as a police officer. There was no failure to train amounting to "deliberate indifference" to the constitutional rights of City residents, and no causal link between any alleged training deficiency and the shooting of Anderson. Anderson obviously disagrees.

The City first argues, and it is undisputed, that there is no evidence in the record of any prior history, custom, policy, or practice of excessive force by the Glenwood police department. On this point the City is alluding to Monell v. Dep't of Soc. Serv., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in which the Supreme Court held that in order to

establish municipal liability, a plaintiff must show that the municipal employee's unconstitutional acts "implement[ ] or execute[ ] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or else are taken "pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision making channels." Id. at 690–91, 98 S.Ct. at 2035–36.

■ However, failure to properly train municipal police officers is also considered a "policy or custom" giving rise to § 1983 liability when that failure reflects deliberate indifference to the constitutional rights of municipal inhabitants and directly causes an actual constitutional violation. City of Canton v. Harris, 489 U.S. 378, 388–92, 109 S.Ct. 1197, 1204–07, 103 L.Ed.2d 412 (1989); McKinney v. DeKalb County, 997 F.2d 1440, 1442 (11th Cir.1993). Negligence—even gross negligence—in training is insufficient to meet the necessary burden. See Harris, 489 U.S. at 388 n. 7, 109 S.Ct. at 1205 n. 7. A municipality boasting constitutionally sound policies and procedures obviously can still be liable for a complete failure to train its officers in their use. Id. at 387, 109 S.Ct. at 1204; Schmelz v. Monroe Cty., 954 F.2d 1540, 1544 (11th Cir.1992) (citing Canton ). It is on this point that Anderson makes his arguments.

From the submissions by the parties, including seven depositions, five affidavits, and excerpts from relevant police guidelines, the Court finds undisputed the following facts concerning the training of Glenwood police officers:

1. All full-time police officers employed by the City, including Officer Hilliard, were required to complete Peace Officer Standards and Training ("P.O.S.T."). G.M. Joiner (Mayor of Glenwood) Affid. ¶ 2; Hilliard Dep. at 39.

2. P.O.S.T. includes training in the use of force, use of deadly force, and operation of emergency vehicles. C. English (Acting Director of Training Standards Division of Georgia Peace Officer Standard and Training Council) Affid. ¶¶ 3, 5–7; T. Coleman (Glen-

wood Chief of Police) Affid. ¶ 2. This training is designed to meet the minimum acceptable legal standards for police conduct in Georgia. English Affid. ¶ 7.

3. The City has its own written policies on the use of force, use of deadly force, and high speed vehicle pursuit. Joiner Affid. ¶ 4–5 and attached exhibit. At P.O.S.T. officers are not trained in these particular policies, because they differ widely between municipalities. Hilliard Dep. at 128; J. Bloodworth (Glenwood police officer) Dep. at 5. The policies are a more specific elaboration on the basic training received at P.O.S.T. Hilliard Dep. at 128–29; Bloodworth Dep. at 5.

4. Mayor Joiner was unaware of the content of P.O.S.T. and incorrectly assumed that officers were trained in Glenwood's specific policies and procedures at P.O.S.T. sessions. Joiner Dep. at 10.

5. Upon joining the force, an officer is required to read and sign a copy of these policies with a notary public present. Hilliard Dep. at 42. The copy is then filed with the Clerk, who allows the officer to re-read it upon request during the hours that she is working. *Id.* at 43.

6. After signing his copy, Officer Hilliard re-read the statement of policies once at a later date, but discussed it with colleagues "several times," *id.* at 43–44, including Chief of Police Coleman. Coleman Dep. at 17. The police department did not have formally scheduled times for discussing the policies and did not provide formal training in their use. Hilliard Dep. at 43–44; Coleman Dep. at 16–17. It did not formally test officers on their knowledge of the policies, Bloodworth Dep. at 6, or give formal performance reviews. Hilliard Dep. at 129.

7. Initial field training for officers consists of spending up to a week of duty supervised by the Chief of Police. Bloodworth Dep. at 7 (testifying that he was supervised for a week); Coleman Dep. at 12 (accepting counsel's estimate that initial supervision lasted "a few hours"). New officers also

undergo a ninety-day probationary period. Joiner Dep. at 41. If the officer's conduct satisfies the City Council during that time, he is then offered a permanent position. *Id.* at 41–42.

8. All City police officers, including Officer Hilliard, attend "in-service training," an extension of P.O.S.T., for four hours a month. Hilliard Dep. at 39. The training covers a range of topics, including use of force, use of deadly force, and high speed pursuit. Coleman Affid. ¶ 3; Joiner Affid. ¶ 3.[1]

9. Officer Hilliard, along with other Glenwood police officers, regularly worked twelve-hour shifts and occasionally worked back-to-back shifts totalling twenty-four hours. Hilliard Dep. at 16–17. There is no indication whether Hilliard was working back-to-back shifts at the time he encountered Anderson's pickup truck.

10. Glenwood police officers generally work unsupervised, although shifts sometimes overlap, resulting in an officer working with some supervision for a few hours each shift. Bloodworth Dep. at 8. Chief of Police Coleman, who is semi-retired, works only part-time. Coleman Dep. at 7–9.

## III. The Adequacy of Police Training for Constitutional Purposes

The essential message of *Canton v. Harris,* the seminal Supreme Court decision on this subject, is that only when a failure to train amounts to "deliberate indifference" can it properly be characterized as the "policy" or "custom" necessary to establish municipal liability under § 1983. 489 U.S. at 389–90, 109 S.Ct. at 1205. A failure to train amounts to deliberate indifference when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390, 109 S.Ct. at 1205. Evidence to this effect could be, for example, a history of misconduct by subordinates that puts the municipality on notice

---

1. The Court agrees with the City that this point is not disputed by the affidavit of George Godfrey, which says that the State's training courses do not train officers in the specifics of Glenwood policies and procedures. This is true, but does not mean that the in-service training did not cover use of force, use of deadly force, and high speed pursuit on its own.

of the need for corrective measures. *Belcher v. City of Foley*, 30 F.3d 1390, 1398 (11th Cir.1994).

As mentioned earlier, gross negligence does not meet the test. The Supreme Court consciously raised the standard from negligence or recklessness to deliberate indifference to stay consistent with its admonition in *Monell* that a municipality is liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." 436 U.S. at 694, 98 S.Ct. at 2037. *See also Pembaur v. Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1300–01, 89 L.Ed.2d 452 (1986) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives[.]"). The focus of the inquiry is on the adequacy of the training program in relation to the tasks performed by city officers. The Supreme Court provided three caveats in this regard: first, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program," *Harris*, 489 U.S. at 390–91, 109 S.Ct. at 1205–06; second, "neither will it suffice [for establishing liability] to prove that an injury or accident could have been avoided if an officer had better or more training," *id.* at 391, 109 S.Ct. at 1206; and third, "for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 385, 391, 109 S.Ct. at 1203, 1206 (requiring "a direct causal link" between municipal policy or custom and alleged constitutional violation).

To survive the City's motion for summary judgment, Anderson must show sufficient facts from which a reasonable jury could find that the City was deliberately indifferent to the training of its officers and that this indif-

ference directly caused the alleged violation of Anderson's constitutional rights. The Court does not address the second point, because Anderson does not adduce evidence sufficient to satisfy the first. The Court's findings of fact on police training in Glenwood, see *supra*, more than dispel the accusation that the City is deliberately indifferent to police training. There is, in fact, no evidence of deliberate deficiency at all.

At best, when construed in a manner most favorable to Anderson, the Glenwood police force should have taken steps to maintain its officers' familiarity with Glenwood police procedures, via testing or regular reviews, instead of relying on the State's basic training and in-service classes. But the Court is satisfied that the State training provided the "basics," Hilliard Dep. at 128–29, in use of force and high speed pursuit and that the Glenwood procedures only embellished this instruction. The State training is modelled on minimum legal standards under Georgia law, and without other evidence to support a finding of deliberate indifference, the fact that an officer received most of his training through the State and not from his small town police force is not nearly enough to accuse that town of deliberate indifference to the needs of its citizenry. *See Cannon v. Taylor*, 782 F.2d 947, 951 (11th Cir.1986); *Languirand v. Hayden*, 717 F.2d 220, 227–28 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984). Anderson also has failed to reveal a direct causal link between not studying the Glenwood policies and procedures (as opposed to general State procedures) and the shooting in this case.

As the City observes in its thorough briefs, when faced with arguments similar to Anderson's, the Eleventh Circuit found no municipal liability in a case governed by the more lenient gross negligence standard prevailing before *Harris* was decided in 1988.[2]

---

2. Anderson seeks to distinguish *Cannon* from the instant case by arguing that in *Cannon*, the police department's policies on high speed chases were adopted *verbatim* from those taught in standard police academy training, and thus there were no separate city policies to be studied (or neglected). All the Eleventh Circuit said, however, is that the state law on high speed vehicle

operations was "reproduced in the Columbus police manual." 782 F.2d at 951. Here, the state law is also reflected in the Glenwood "police manual." As Officers Hilliard testified, the City procedures are "nearly the same" as the State ones. Dep. at 129; Bloodworth Dep. at 5 (City procedures are "basically the same thing" as State basic training). The *Cannon* court was

*See Cannon, supra.* *Cf. McQurter v. City of Atlanta,* 572 F.Supp. 1401, 1421 (N.D.Ga. 1983), *appeal dismissed,* 724 F.2d 881 (11th Cir.1984) ("[T]his failure to refresh training in deadly force, though it may be simple negligence ... does not arise to the level of recklessness[.]"). There is also no evidence of a prior pattern of constitutional violations by police officers in Glenwood.

■ Nor does the practice of working twelve-hour shifts make the City deliberately indifferent. The practice hardly seems prudent—especially when shifts are served back-to-back—but it also does not amount to a City policy or custom of deliberate indifference. As the City points out, Glenwood "is a small town;" the long shifts are probably more the result of budgetary constraints or lack of need than any contempt for public safety. In addition, even accepting, *arguendo,* that lengthy shifts *per se* imply deliberate indifference, there is no evidence that the practice was the direct cause—or even the indirect cause—of Officer Hilliard's conduct during the events underlying this suit. *See Bibbo v. Mulhern,* 621 F.Supp. 1018, 1021–22 (D.Mass.1985) (noting that while there was a possibility that fatigue affected officer's judgment, "[a] mere possibility is not the appropriate standard for imposing [municipal] liability," especially considering the lack of evidence of past police brutality).

■ Finally, Anderson's contention that additional steps or training "could have" been pursued by the City is not sufficient support for municipal liability. *See Harris,* 489 U.S. at 391, 109 S.Ct. at 1206. Neither is there evidence of a lack of supervision amounting to deliberate indifference. Again, the City of Glenwood is not large; it does not

employ enough officers to provide constant supervision to all those working at a given time. *Cf.* Coleman Dep. at 14. While this alone could not excuse the City in light of other evidence of deliberate indifference, there is no other evidence. There is no prior pattern of excessive force in Glenwood. The City has explicit policies on use of force, and all officers are at least aware of them. Officers receive regular "in-service training," and the testimony suggests that Chief of Police Coleman, while not directly supervising on a regular basis, is genuinely concerned with the quality of his officers.[3] In this light, a court cannot find deliberate indifference to the rights of City inhabitants simply because City police officers patrol the streets alone (and occasionally do so on long shifts).[4]

The City of Glenwood's motion for summary judgment on the claim of failure to train is granted.

## IV. State Law Claims

The City also denies any responsibility for the state law assault and battery claims against Hilliard. It spends little time defending against the claims, and Anderson spends even less attempting to support them. The sole defense raised by the City on summary judgment is that Anderson did not provide it with *ante-litum* notice—the six-month written notice required before suing a municipality under state law. Section 36–33–5 of the Georgia Code explicitly requires it, and Anderson did not give it. Consequently, his right of action against the City is barred. *Camp v. City of Columbus,* 252 Ga. 120, 311 S.E.2d 834 (1984); *Stambaugh v. City of Demorest,* 221 Ga. 527, 145 S.E.2d 539 (1965).[5]

"unwilling" to say that the Georgia State training procedure was "so inherently inadequate" that it subjected officers to liability where there was no other evidence of past police misconduct resulting from lack of training. *Id.*

3. Coleman also testified that he received no special training as Chief of Police, Dep. at 4–5. Anderson provides this fact as evidence of the City's deliberate indifference. The Court disagrees, however. Coleman received the same general police training as other officers before he was Chief, and Anderson does not hint at what special additional training might be required to supervise a three man police force.

4. Anderson makes much of the fact that not only do officers spend long shifts on duty, but do so without supervision by another officer. This aspect of police work, however, is not unique to the City of Glenwood. Most small police forces operate in this manner, and the practice is not indicative of deliberate indifference to the public; it is an inherent feature of the profession.

5. The Court is aware that the *ante-litum* notice requirement does not apply to actions brought under 42 U.S.C. § 1983. *See, e.g., Majette v. O'Connor,* 811 F.2d 1416, 1418 (11th Cir.1987). Federal courts may not require exhaustion of state remedies in a § 1983 action for damages

## V. Conclusion

Because the undisputed evidence shows that the City was not deliberately indifferent in the training or supervision of its police officers, the City's motion for summary judgment on Anderson's claim under 42 U.S.C. § 1983 is **GRANTED.**

Because Anderson did not give the statutorily required *ante-litum* notice for state law claims against municipalities, his action under state law is barred. The City's motion for summary judgment on those claims is **GRANTED** as well.

There are no remaining claims against the City of Glenwood. It is hereby dismissed from this case.

SO ORDERED.

for deprivation constitutional rights. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Anderson's state law claims, however, are not brought under § 1983. They are in this Court under supplemental jurisdiction. 28 U.S.C. § 1367. Thus these counts are subject to the notice requirement, even though Anderson's central count under § 1983 is not. *See, e.g., City of Atlanta v. J.A. Jones Constr. Co.*, 195 Ga.App. 72, 78, 392 S.E.2d 564 (1990), *rev'd on other grds*, 260 Ga. 658, 398 S.E.2d 369 (1990).