**Calvin L. WILLIAMS, as Administrator and Personal Representative of the Estate of Annie Joyce Williams, Deceased, Plaintiff,**

v.

**CITY OF MONTGOMERY, et al., Defendants.**

**No. CIV. A. 98–A–361–N.**

United States District Court, M.D. Alabama, Northern Division.

Oct. 16, 1998.

Charles H. Volz, Jr, Montgomery, AL, for Plaintiff.

George B. Azar, F. Tim McCollum, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on a Motion to Dismiss filed by Defendants the City of Montgomery ("the City"), Montgomery police detective Kevin Murphy ("Murphy") and fictitious defendants A through G ("the fictitious defendants") (collectively, "Defendants") on July 15, 1998. Plaintiff Calvin Williams ("Plaintiff") filed a six-count Second Amended Complaint against the Defendants, alleging state law claims for negligence and/ or wantonness and breach of statutory duty in Counts I and II, and section 1983 claims

for deprivation of federal Constitutional rights under color of state law for failure to provide Equal Protection in Counts III and IV, negligent training leading to a violation of Equal Protection in Count V and violation of substantive due process and the "right to protection" in Count VI.

Defendants move for the dismissal of Plaintiff's claims on numerous grounds. First, Defendants allege that all of the claims by Plaintiff against the fictitious defendants are due to be dismissed because federal courts do not recognize fictitious-party pleading. Next, Defendants allege that Counts III through VI of the Second Amended Complaint are due to be dismissed because the Plaintiff has failed to state claims upon which relief can be granted. Defendants further allege that all claims against Murphy are due to be dismissed because: *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir.1991), and qualified immunity disallow the § 1983 claims against him, while discretionary function immunity shields Murphy from liability for the state law claims. Finally, Defendants allege that the statute of limitations bars at least part of Plaintiff's claims.

For reasons discussed below, Defendants' Motion is due to be granted in part and denied in part.

## II. *MOTION TO DISMISS STANDARD*

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not … [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon*, 467 U.S. at 73, 104 S.Ct. 2229. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir.1985).

## III. *FACTS*

The allegations of the Plaintiff's Second Amended Complaint are as follows:

Plaintiff brings this case as Administrator and Personal Representative of the estate of Annie Joyce Williams ("Ms.Williams"). During her lifetime, Ms. Williams had a relationship with and was married to David Lee Long ("Long"). Throughout the relationship and marriage, and following the dissolution of the marriage, Long routinely harassed, threatened and physically abused Ms. Williams. For example, on March 18, 1994, Ms. Williams presented evidence to the Montgomery Police Department ("MPD") which was sufficient to require the issuance of a warrant and/ or an investigation of Long for the offense of Rape in the First Degree against Ms. Williams. *See* Ala.Code (1975) § 13A–6–61. Ms. Williams also called 911 on more than one occasion to report incidents and/ or threats of actual physical violence by Long against her and members of her family. MPD officers were dispatched to her residence at those times.

On or about September 16, 1995, Anthony Williams, Ms. Williams brother, filed a formal complaint with the MPD charging that Long had fired a pistol at Ms. Williams and him. On the basis of Anthony Williams' affidavit, a warrant for Long's arrest was issued on a charge of reckless endangerment. On or about October 10, 1995, Ms. Williams filed a formal complaint against Long with the MPD charging that Long struck Ms. Williams with a pistol, caused physical injury to her and a minor child and made repeated threats to kill Ms. Williams. Based on this complaint, a misdemeanor warrant for Long's arrest was issued on a charge of assault in the third degree. Another individual who was threatened by Long with a pistol during the course of Long's assault on Ms. Williams also complained to the MPD, and an additional criminal charge of menacing was brought against Long.

On December 12, 1995, following a trial in the Municipal Court of Montgomery County, Long was convicted for each of these three misdemeanor charges. Long was fined and sentenced to a period of incarceration; however, Long appealed the convictions and was

released on bond pending a hearing on his appeal. Long was released from jail without notice to Ms. Williams or her family. Plaintiff also alleges that the bond amount was insufficient to provide protection for Ms. Williams and the public, that the City failed to take reasonably necessary steps to prevent Long from possessing a firearm and failed to provide for the revocation of bond in the event of Long's possession of a firearm during his period of release.

In the meantime, on October 18, 1995, pursuant to Ms. Williams' Petition for Divorce, a Temporary Restraining Order was issued by the Circuit Court of Montgomery County, enjoining Long from "harming, molesting, abusing, threatening, communicating or annoying [Ms. Williams] in any manner, directly or indirectly." Despite this order, Long made threats to kill Ms. Williams during his release. On February 5, 1996, the Restraining Order was made permanent as part of a Final Decree of Divorce.

Thereafter, Long continued and intensified his pattern of harassing, stalking and threatening Ms. Williams, and, on February 12, 1996, she went to the MPD to seek protection from Long. At that time, Ms. Williams spoke with Murphy and others, filing a formal complaint against Long in a sworn affidavit. Ms. Williams provided Defendants with a copy of the Permanent Restraining Order and described Long's prior violent actions and convictions. She also reported, in detail, Long's continued acts of stalking, harassment and threats of serious physical injury and death. A City magistrate informed Ms. Williams that a misdemeanor warrant alleging a violation of the protective order would be issued, but that in order to secure a felony warrant, the City would have to pursue an investigation. Despite Ms. Williams' discussions with Murphy, he refused to pursue an investigation and informed Ms. Williams that a felony warrant could not be issued because she had not sustained actual physical injury.

Plaintiff alleges that the above-stated facts created a special relationship between Ms. Williams and Defendants and that Defendants had actual knowledge of the danger Long presented to Ms. Williams. Plaintiff also alleges that Defendants knew or should have known that absent immediate action to take Long into custody or to provide protection to Ms. Williams, she was likely to suffer serious injury or death. Despite their knowledge, however, Plaintiff alleges that Defendants took no action whatsoever to protect Ms. Williams from Long. Plaintiff alleges that this inaction was a result of a pattern and practice by Defendants of not affording protection to persons complaining of threats of domestic violence.

Plaintiff alleges that in the course of dealing with these incidents of domestic violence, the MPD did not take Ms. Williams' reports seriously and treated her unfairly because she was a woman involved in a relationship with Long. In addition to Murphy's refusal to issue a felony warrant, Plaintiff offers two more examples illustrating the MPD's dismissive treatment of her complaints. First, when Ms. Williams reported the incident of First Degree Rape, a MPD detective informed her that she could only obtain a misdemeanor charge of Assault in the Third Degree because of her relationship with Long. Furthermore, when MPD officers responded to Ms. Williams' 911 calls, they did not complete written reports describing the alleged incidents of domestic violence as required by Ala.Code § 15–10–3(c).

On February 16, 1996, four days after Ms. Williams' last complaint to the MPD, Long shot and killed Ms. Williams.

## IV. DISCUSSION

### A. Fictitious Defendants A through G

Defendants allege that all of the claims by Plaintiff against the fictitious defendants are due to be dismissed because federal courts do not recognize fictitious-party pleading. A Uniform Scheduling Order was issued by this court on April 16, 1998. That Order gave the parties seventy-five (75) days to bring in new parties. Since Plaintiff did not move to add any parties within the time allotted by this court, all claims against the fictitious defendants are DISMISSED.

### B. Counts III through VI: Failure to State a Claim

Defendants allege that Counts III through VI of the Second Amended Complaint are due to be dismissed because the Plaintiff has

failed to state claims upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). These counts all state claims under 42 U.S.C. § 1983 for deprivation of rights provided by the Fourteenth Amendment to the United States Constitution under color of state law.

■ Counts III and IV state that Defendants violated Plaintiff's decedent's rights to equal protection guaranteed under the Fourteenth Amendment to the United States Constitution. The equal protection clause commands that no state shall deny to any person within its jurisdiction the equal protection of the laws. *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). In order to maintain a claim for violation of equal protection, a plaintiff must show that similarly situated persons were treated dissimilarly. *Id.* Plaintiff claims that Defendants, acting under color of state law, violated Ms. Williams' rights to equal protection by treating persons who complain of acts or threats of domestic violence differently from persons complaining of non-domestic acts or threats of violence (Count III) and that this treatment is based on a discriminatory animus toward women and/ or has a disparate impact on women, who are the primary victims of domestic violence (Count IV).

At this stage of the litigation, Plaintiff need not detail the manner in which a similarly situated person was treated differently. Plaintiff's Count III equal protection claim survives Defendants' Motion to Dismiss given his allegation that Defendants, state actors, discriminated against Ms. Williams by treating her, as a victim of domestic abuse and a recipient of threats of domestic abuse, differently from victims of other acts of violence and recipients of threats of other acts of violence. Because Plaintiff could prove facts in support of Count III's claim of disparate treatment in violation of Ms. Williams' right to equal protection, Defendants' Motion to Dismiss Plaintiff's Count III equal protection claim is due to be denied.[1]

■ Count IV presents another claim for violation of Ms. Williams' right to equal protection. To paraphrase Count IV, Plaintiff alleges that, assuming the allegations in Count III as true, the policy of treating victims of domestic violence (and those receiving threats of domestic violence) differently from victims of other types of violence (and those receiving threats of other types of violence) either results from or was caused by a discriminatory animus toward women, who are the overwhelming majority of victims of domestic violence. This count appears on its face to state a claim for disparate impact, which is insufficient to support a section 1983 claim. *Nash v. The Consolidated City of Jacksonville, Duval County, Fla.,* 895 F.Supp. 1536, 1541 (M.D.Fla.1995). This count, however, can be re-cast, in the light most favorable to the Plaintiff, to state a claim for disparate treatment. If the origin of the alleged policy of disparate treatment of victims of domestic violence supporting Count III is, as Plaintiff alleges, intentional discrimination against women, then the policy affects disparate treatment on the basis of gender. Because Plaintiff could prove facts in support of Count IV's claim of disparate treatment in violation of Ms. Williams' right to equal protection on the basis of gender, Defendants' Motion to Dismiss Plaintiff's Count IV equal protection claim is due to be denied.[2]

■ Count V alleges that a pattern or practice of negligent training of MPD officers by the City rises to the level of a Constitutional violation. Defendants correctly note that in order to pursue a failure to train claim, a plaintiff must first successfully plead a constitutional violation by a municipal actor. *See Brown v. City of Elba,* 754 F.Supp. 1551, 1557 n. 18 (M.D.Ala.1990). Defendants further contend that since the Plaintiff has failed to successfully plead such a violation, the failure to train claim must also fail. This court has found, however, that the Plaintiff

1. Defendants are free to reassert this argument later in a Motion for Summary Judgment. At the summary judgment stage, Plaintiff would have to produce evidence to establish the claim. At the Motion to Dismiss stage, the parties may not submit—and the court may not consider—matters outside the pleadings.

2. Again, Defendants are free to reassert this argument later in a Motion for Summary Judgment. At the summary judgment stage, Plaintiff would have to produce evidence to establish intentional discrimination.

has stated claims for denial of equal protection in Counts III and IV sufficient to overcome a motion to dismiss. For that reason, the failure to train claim also survives, and Defendants' Motion to Dismiss Plaintiff's Count V failure to train claim is due to be denied.

■ Count VI purports to state a claim for a violation of Ms. Williams' right to protection under the due process clause of the Fourteenth Amendment. Defendants cite this court to *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), for the proposition that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Plaintiff alleges, however, that a "special relationship" existed between Ms. Williams and the City based on her repeated reports of Long's violent behavior and requests for protection. *See Cornelius v. Town of Highland Lake, Ala.*, 880 F.2d 348 (11th Cir.1989). Under *Cornelius,* proof of a special relationship and culpable conduct on the part of a defendant causing a special danger to an individual can create an affirmative duty to protect that individual. *Id.* at 353.

This court notes that the continuing viability of *Cornelius* has been questioned. *See, e.g., Wooten v. Campbell,* 49 F.3d 696, 700 n. 4 (11th Cir.1995) (noting that *Cornelius* may not have survived *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). In *Cornelius,* a state employee was required to work in an office where work squad inmates, working as custodial staff, were given access to dangerous instrumentalities. Two of these inmates abducted the employee and "terrorized her" for three days. This case is inapplicable to the situation at hand. Neither the MPD nor Murphy did anything to cause a special danger to Ms. Williams. Rather, the pleadings show that Defendants tried to help Ms. Williams. The danger to Ms. Williams came from Long, who was not an inmate, and Ms. Williams was certainly not required to work (or even be near) Long. To the contrary, Long was required to refrain from contact with Ms. Williams, and a warrant for his arrest for violation of the Restraining Order was issued by the MPD. To hold that Plaintiff stated a claim for violation of the right to protection would be to judicially create a legal right for a crime victim to sue any time the police do not take the action that the victim would consider the most effective in retrospect. This court declines to do so and finds instead that Defendants' Motion to Dismiss Plaintiff's Count VI claim for violation of due process is to be granted.

**C. *Section 1983—Qualified Immunity***

■ Defendants allege that Murphy, who is sued in both his individual and official capacities, is entitled to qualified immunity and therefore cannot be held liable in his individual capacity for any of Plaintiff's § 1983 claims (Counts III through V [3]). Qualified immunity shields government actors in all but exceptional cases. *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146 (11th Cir.1994). An official, in his individual capacity, is entitled to qualified immunity if he is performing discretionary functions and his actions do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Riley v. Camp,* 130 F.3d 958, 968 (11th Cir. 1997) (en banc) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

At the motion to dismiss stage of the proceedings, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined. *GJR Investments, Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1366 (11th Cir.1998); *Wooten v. Campbell,* 49 F.3d 696, 699 (11th Cir.1995). A "necessary concomitant" to the question of whether a plaintiff has alleged a violation of a clearly established federal right is "the determination of whether the plaintiff has asserted a violation of a [federal] right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). In order to establish whether the Plaintiff has properly alleged a violation of her constitutional or statutory rights, the court must consider the allegations set forth

**3.** Count VI, which purported to state a § 1983 claim, has been dismissed as explained above in section IV.B. The court therefore does not address Murphy's qualified immunity defense to that claim.

in the Complaint in light of the Eleventh Circuit's heightened pleading standards in § 1983 claims. *GJR Investments,* 132 F.3d at 1366–67; *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992).

 Because the law favors entitlement to qualified immunity, the Eleventh Circuit has established a heightened pleading requirement for § 1983 claims. Some factual detail in the pleadings is necessary to adjudicate all § 1983 claims. *GJR Investments,* 132 F.3d at 1367; *Oladeinde,* 963 F.2d at 1485. However, the necessity for detailed pleadings is especially apparent in cases involving qualified immunity, where the court must determine whether an individual defendant's actions violated a clearly established right. *GJR Investments,* 132 F.3d at 1367; *see Harris v. District Board of Trustees of Polk Community College,* 981 F.Supp. 1459, 1461–62 (M.D.Fla.1997) (requiring heightened pleading for section 1983 claims involving state actors in their individual capacities). "If a plaintiff has not sufficiently alleged a violation of any constitutional right, it is axiomatic that the plaintiff has failed to allege the violation of a 'clearly established' right." *GJR Investments,* 132 F.3d at 1367. Accordingly, in a motion to dismiss a § 1983 claim on qualified immunity grounds, the court must first consider whether the plaintiff has satisfied the heightened pleading requirements.

This court has found that Counts III, IV and V state adequate constitutional claims to survive Defendants' Motion to Dismiss. Whether these counts state adequate claims against Murphy is a different question. Since police detectives have discretionary authority to make decisions regarding investigations of complaints of the type made by Ms. Williams, to determine whether to issue a warrant and to determine what type of warrant to issue, the defense of qualified immunity turns on whether Murphy is alleged to have done anything which violates any clearly established statutory or constitutional rights of which a reasonable person would have known. Murphy is entitled to qualified immunity at the motion to dismiss stage if Plaintiff's complaint fails to allege a violation of a clearly established constitutional right. *Santamorena v. Georgia Military College,* 147 F.3d 1337, 1340 (11th Cir.1998).

 As Defendants note, in order to show that a right is clearly established, a plaintiff must "show that there existed sufficient case law establishing the contours of his or her constitutional rights such that the unlawfulness of the defendant's conduct would have been apparent to a reasonable official in the same circumstances .... If no such case law exists, then the defendant is entitled to qualified immunity." *Nicholson v. Georgia Dep't of Human Resources,* 918 F.2d 145, 147 (11th Cir.1990). In the present case, Plaintiff has not shown that any of the constitutional rights asserted are established so clearly that Murphy or any reasonable state official in the same circumstances would have known that declining to issue a felony warrant in the absence of any physical injury in a domestic violence case and telling Ms. Williams to return later was in any way unlawful.

To be sure, all citizens are entitled to equal protection and due process; however, the pleadings show that Murphy, at most, misstated the law and underestimated the danger to Ms. Williams. The pleadings do not support that Murphy could have acted with knowledge that his actions were contrary to clearly established constitutional rights. Murphy is entitled, in his individual capacity, to the defense of qualified immunity as to Counts III and IV.

Count V alleges that Murphy, as a defendant, deprived Ms. Williams of equal protection by failing to adequately train members of the MPD. Plaintiff has not alleged, however, that Murphy was in any way responsible for this alleged inadequate training. This court finds that Plaintiff has not stated a claim against Murphy in Count V, and even if Plaintiff had stated a claim against Murphy in this count, Murphy would be immune from liability in his individual capacity.

### D. *Official Capacity Claims against Murphy*

Plaintiff states that he does not attempt to assert any section 1983 claims against Murphy in his official capacity. The caption, however, does allege that Murphy is being sued in both his individual and official capacities, and the separate counts do not specify in which capacity Murphy is named as a

defendant. For the sake of clarity, this court specifically finds that there are no section 1983 claims against Murphy in his official capacity.

■ Defendants contend that all claims, including the two state law tort claims, against Murphy in his official capacity are due to be dismissed under *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir.1991). The court in *Busby*, analyzing a section 1983 claim, reasoned that the City was the intended defendant and that in order to recover against the municipality, the plaintiff had to establish that the illegal behavior, racial harassment, occurred pursuant to a custom or policy of the municipality since respondeat superior theory was inapplicable. *Id.* at 776 (citing *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The court therefore affirmed a directed verdict in favor of individual named defendants on the ground that section 1983 claims against municipal officers in their official capacities were identical to the claim against the City of Orlando. *Id.*

This court finds *Busby*'s section 1983 rule inapplicable. The only claims at issue in this case are state law tort claims. As discussed in section IV.F. below, the City is immune from liability for its officers' intentional torts; however, more important, the City is liable for its officers' negligence. *See* Ala.Code § 11–47–190. To dismiss the official capacity state law claims against Murphy at this point would be premature, given that Plaintiff may be able to prove facts establishing that Murphy acted negligently and that the City would be liable for his negligence.[4] Defendants' motion to dismiss the state law claims against Murphy in his official capacity is denied.

### E. *State Law Claims—Discretionary Function Immunity*

As a peace officer of the state of Alabama, Murphy is entitled to the discretionary function immunity provided by Ala.Code § 6–5–338(a) (Supp.1997). This statute provides, in relevant part:

Every peace officer . . .who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

■ The Alabama Supreme Court recently discussed § 6–5–338, noting that "[t]his section extends discretionary function immunity to municipal police officers . . . unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith." *Couch v. City of Sheffield*, 708 So.2d 144, 153 (Ala. 1998). The theory underlying this "bad faith exception" to discretionary function immunity is that conduct carried out maliciously or in bad faith is never carried out on behalf of the municipality, but rather, on behalf of the actor's self interest.

Applying § 6–5–338 to the present facts, it is undisputed that Detective Murphy is a municipal police officer. Given Murphy's status as a municipal police officer, the court must then determine whether Murphy was engaged in a discretionary function. If Murphy's statements and determination to issue only a misdemeanor warrant were discretionary functions, the burden shifts to Plaintiff to demonstrate that Murphy acted in bad faith, with malice or willfulness in order to deny him immunity. *Sheth v. Webster*, 145 F.3d

---

4. The court expresses no opinion on the merits of the negligence claim and notes that Plaintiff will have the burden of establishing Murphy's negligence.

1231, 1238–39 (11th Cir.1998). Thus, assuming Murphy was exercising discretionary functions at the time he committed the alleged tort, he would be entitled to discretionary function immunity unless Plaintiff could possibly produce evidence that Murphy's conduct was so egregious as to show bad faith, malice or willfulness. *Id.* at 1239.

 "Discretionary functions" are "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." *Id.* (quoting *Wright v. Wynn*, 682 So.2d 1, 2 (Ala.1996)). As noted above, police detectives clearly have discretion to determine whether to investigate, to issue warrants and to issue particular types of warrants.

 The burden therefore shifts to Plaintiff to demonstrate that Murphy acted willfully, out of malice, or in bad faith in order to deny him immunity. *Id.* Plaintiff alleges that Murphy's conduct was willful, malicious and undertaken in bad faith. While it may be difficult for Plaintiff to obtain evidence to prove this allegation, Plaintiff is nonetheless, at this early stage of the litigation, entitled to an opportunity to discover such evidence. Accordingly, Defendants' Motion to Dismiss the state law claims against Murphy in his individual capacity on the basis of discretionary-function immunity is denied.[5]

### F. City's Immunity from Liability for State Law Claims

 Defendants allege that the City is immune from state law claims based on respondeat superior liability. *See Couch v. City of Sheffield*, 708 So.2d 144 (Ala.1998) (citing Ala.Code § 11–47–190). Defendants contend that Plaintiff's only state law claims against the City are based on a respondeat theory and are thus due to be dismissed.

This court finds Defendants to be mistaken in their reading of *Couch*. In *Couch*, the Alabama Supreme Court found that the City defendant was immune from liability for *intentional* torts under Ala.Code § 11–47–190.

*Id.* at 154. More important, the statute provides, in relevant part:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty ....

Ala.Code § 11–47–190. The statute, therefore, specifically provides for respondeat superior liability for municipalities if the claims supporting such liability are based on negligence of a municipal agent, officer or employee. The Alabama Supreme Court has noted that "[a] municipality ... is generally chargeable with the negligence of its employees acting within the line and scope of their employment." *Rich v. City of Mobile*, 410 So.2d 385, 387 (Ala.1982).

Counts I and II of Plaintiff's Second Amended Complaint state claims which purport to hold the City liable for, among other things, negligent acts of its agents. Such claims are not precluded by Ala.Code § 11–47–190. Defendants' Motion to Dismiss state law claims against the City is therefore denied.

### G. Statute of Limitations

 In Defendants' Reply to Plaintiff's Response to Motion to Dismiss, Defendants allege a statute of limitations defense. There is a two-year statute of limitations period in Alabama for section 1983 actions. *Kendrick v. Jefferson County Bd. of Educ.*, 932 F.2d 910, 913 (11th Cir.1991). Defendants allege that since this action was filed on February 11, 1998, any claims based on events occurring before February 11, 1996 are time-barred. Defendants, however, fail to provide any authority to support their contention that this court cannot consider any events which occurred outside of the limitations period and may have contributed to the ultimate event which forms the basis of Plaintiff's claims. Section 1983 actions do not accrue until the plaintiff knows or has reason to know that he has been injured. *Mullinax*

---

5. Defendants are free to reassert this argument later in a Motion for Summary Judgment. At the summary judgment stage, Plaintiff would have to produce evidence to establish that Murphy acted willfully, maliciously, or in bad faith.

*v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987). All of Plaintiff's claims are based on the ultimate event of Ms. Williams' death on February 16, 1996, which falls within the two-year limitations period. This court will therefore consider all relevant facts supporting Plaintiff's claims.[6]

## V. CONCLUSION

For the above-stated reasons, the Defendants' Motion to Dismiss is due to be granted in part and denied in part. A separate order consistent with the court's rulings herein will be entered.

## ORDER

This cause is before the court on Defendants' Motion to Dismiss filed on July 15, 1998. In accordance with the Memorandum Opinion issued concurrently herewith, it is hereby ORDERED:

1. Defendants' Motion to Dismiss the fictitious defendants is GRANTED, and the fictitious Defendants are DISMISSED.

2. Defendants' Motion to Dismiss Count VI of Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) is GRANTED, and Count VI is DISMISSED with prejudice.

3. Counts III, IV and V of Plaintiff's Second Amended Complaint, insofar as they purport to state claims against Detective Murphy in his individual capacity are DISMISSED with prejudice, and Defendants' Motion to Dismiss these claims is GRANTED.

4. Defendants' Motion to Dismiss Counts I and II of Plaintiff's Second Amended Complaint, insofar as they purport to state claims against Detective Murphy in his official capacity, is DENIED.

5. Defendants' Motion to Dismiss Counts I and II of the Plaintiff's Second Amended Complaint against Murphy in his individual capacity is DENIED.

6. Defendants' Motion to Dismiss Counts I and II against the City of Montgomery is DENIED.

7. Defendants' Motion to Dismiss based upon the statute of limitations is DENIED.

8. Plaintiff's Motion to Strike and/ or Motion to Allow Response to Defendants' Additional Arguments is DISMISSED as MOOT.

9. Defendants are given until October 28, 1998 to answer the Second Amended Complaint.

---

6. Plaintiff filed a Motion to Strike and/ or Motion to Allow Response to Defendants' Additional Arguments in reference to Defendants' statute of limitations defense on August 14, 1998. Because this court has ruled that the statute of limitations does not bar this court's consideration of all of the events leading up to Ms. Williams' death, the Plaintiff's Motion is DENIED as moot.