Paul P. DIDZEREKIS, independent administrator of the estate of Marsha Brewer, deceased; et al., Plaintiff,

v.

Gregory A. STEWART; the City of Naperville, a body politic and corporate; et al., Defendants.

No. 96 C 8148.

United States District Court,
N.D. Illinois,
Eastern Division.

March 23, 1999.

Arnold H. Landis, Law Office of Arnold H. Landis, Chicago, IL, for Paul P. Didzerekis, Leigh Ann Brewer, Lara Brewer.

Kenneth Theodore Kubiesa, Kubiesa, Spiroff, Gosselar & Pieper, P.C., Oakbrook Terrace, IL, for Gregory A. Stewart.

Michael M. Roth, Howard P. Levine, Paul L. Stephanides, City of Naperville, Naperville, IL, for City of Naperville, H. Brestal, L. Martin, Degregorio, Jerry

Barker, Steve Hochstetler, Sgt. J. Montanari, M. Winter, J. McAnally.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

The estate and children of the late Marsha Brewer–Stewart, bring this action against Defendants, City of Naperville ("City"), Officers Brestal, Martin, Degregorio, Barker, Baker, Hochstetler, Montanari, Winter, and McAnally ("Officers") and Gregory Stewart ("Stewart"). In Count I, plaintiffs seek relief under 42 U.S.C. § 1983 against the City and Officers for violation of decedent's constitutional rights under the Fourteenth Amendment. In Count II and III, the first of several state law claims brought under pendant jurisdiction, plaintiffs allege willful and wanton conduct (Count II) and intentional infliction of emotional distress (Count III) on the part the City and Officers. In Count IV, plaintiffs allege that Stewart's actions resulted in injury to Marsha Brewer–Stewart prior to her death under the Survival Act, 755 Ill. Comp. Stat. 5/27–6 (Ill.Stat.Ann.1992). In Count V, plaintiffs charge that Stewart's actions resulted in Marsha Brewer–Stewart's death and caused them injury under the Wrongful Death Act, 740 Ill. Comp. Stat. 18¾ (Ill.Stat.Ann.1992). The City and Officers now move to dismiss Count I, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Counts II and III for lack of subject matter jurisdiction. Defendant Stewart moves to dismiss Counts IV and V under Rule 12(b)(1) for lack of subject matter jurisdiction, or alternatively, under 12(b)(6). For the reasons set forth below, the court denies the City and Officers' motion to dismiss Counts I–III and grants Stewart's motion to dismiss Counts IV and V for lack of subject matter jurisdiction.

## Background

Marsha Brewer–Stewart ("Marsha") was married to Defendant Stewart. (2nd Am. Compl.¶ 7.) Stewart had a history of violent criminal behavior. (*Id.* ¶ 8.) He had tried to commit suicide several times and on May 9, 1993, he attempted to murder Marsha. (*Id.*) Stewart also had a long history of mental illness. (*Id.* ¶ 9.) He had been a patient at Mercy Center, a mental health facility, until December 10, 1993, when he was discharged. (*Id.* ¶ 9–10.) According to plaintiffs, the City police knew about Stewart's violent behavior and history of mental illness. (*Id.* ¶ 11.)

On December 26, 1993, at approximately 8:35 p.m., Marsha frantically telephoned "911" requesting emergency help at her home, 531 FesslerStreet, in Naperville, Illinois. (*Id.* ¶ 12.) One or more of the Officers arrived at Marsha's home by approximately 8:40 p.m. (*Id.* ¶ 13.) Other Officers arrived shortly after 8:40 p.m. (*Id.*) Officers did not make forced entry into Marsha's home until approximately 9:20 p.m. (*Id.* ¶ 14.) When Officers did make forced entry, they discovered that Marsha had sustained fatal knife wounds at Stewart's hands. Stewart had also stabbed himself in the chest. (*Id.*) Stewart was convicted for killing Marsha and is now incarcerated. (*Id.* ¶ 3.) Plaintiffs did not discover the details concerning the events of December 26, 1993, until Stewart's criminal trial in January 1995. (*Id.* ¶ 17.)

Subsequently, Plaintiffs Paul P. Didzerekis ("Didzerekis"), administrator of Marsha's estate, and Marsha's children, Leigh Ann Brewer, Dana Brewer, and father and next friend of Lara Brewer,[1] Robert Brewer filed this action in the Circuit Court of Cook County. (*Id.* ¶ 16.) Plaintiffs voluntarily non-suited their cause of action in that court since it lacked jurisdiction. That court then dismissed the action without prejudice on November 25, 1996.

---

1. Lara Brewer was born on July 26, 1980 and is a minor. Dana Brewer was born to Mar-

sha on September 1, 1977. (2nd Am. Compl.¶ 18.)

(*Id.*) On December 12, 1996, plaintiffs filed a two-count complaint with this court against Stewart, the City and Officers. Defendants sought leave to file a motion to dismiss the complaint, which the court granted. However, the court vacated the briefing schedule when it granted plaintiffs' request to file an amended complaint. (*See Mem. Order and Op.*, No. 96 C 8148, J. Williams, Feb. 9, 1998.)

Plaintiffs filed their First Amended Complaint on February 28, 1997. In that complaint, plaintiffs alleged that both the City and Officers violated Marsha's civil rights, including her rights under the Fourteenth Amendment. In Count II, Didzerekis charged that Stewart should be held liable to Marsha's estate for the pain and suffering Marsha endured prior to her death. In Count III, the remaining plaintiffs claim that Stewart is liable to them under the Wrongful Death Act. Plaintiffs argued that because of Stewart's wrongful act, they were deprived of her support, love, affection, companionship, guidance, care and attention. Defendants moved to dismiss the First Amended Complaint on May 8, 1997. Plaintiffs then filed a motion for leave to amend their complaint a second time. On December 24, 1997, Stewart filed a motion to dismiss plaintiffs' First Amended Complaint. On February 9, 1998, the court granted all defendants' motions to dismiss the First Amended Complaint without prejudice and denied plaintiff's motion for leave to file a Second Amended Complaint, except to properly allege the parent-child relationship between Marsha and plaintiffs, Leigh Ann, Dana and Lara Brewer.

The City and Officers now move to dismiss Count I of plaintiffs' Second Amended Complaint for failure to state a claim upon which relief can be granted.[2] Stewart moves to dismiss Counts II and III for lack of subject matter jurisdiction, or in the alternative, under Rule 12(b)(6) for failure to state a claim.

### Analysis

A motion of dismiss tests the legal sufficiency of the complaint and not the merits

---

**2.** In their motion to dismiss, the City and Officers argue once again that plaintiffs lacked standing to sue for the alleged § 1983 violations against Marsha. In its February 9, 1998 order, the court asked defendants to limit their argument to whether plaintiffs have adequately stated a claim under § 1983 in the instant motion to dismiss. In the ruling on defendants' first motion to dismiss, the court considered the issue of whether § 1983 supports a claim for loss of companionship. Several circuits have found that family members may not sue under § 1983 based upon constitutional deprivations suffered by another family member. *See Broadnax v. Webb*, 892 F.Supp. 188 (E.D.Mich.1995); *Harpole v. Arkansas Dep't of Human Servs.*, 820 F.2d 923, 928 (8th Cir.1987); *Soto v.. Carrasquillo*, 878 F.Supp. 324, 327 (D.P.R.1995), *aff'd* 103 F.3d 1056 (1st Cir.), *cert. denied*, — U.S. ——, 118 S.Ct. 71, 139 L.Ed.2d 32 (1997); *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1506–07 (10th Cir.1990). Other circuits, however, have held that individuals may pursue a § 1983 claim for the death of their child or parent. *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir.1996); *Palacios v. City of Oakland*, 970 F.Supp. 732, 745 (N.D.Cal.1997) citing *Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir.) *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987); *Estate of Bailey v. County of York*, 768 F.2d 503, 509 n. 7 (3rd Cir.1985); *Agresta v. Sambor*, 687 F.Supp. 162, 167 (E.D.Pa.1988).

In making its decision, this court focused on a Seventh Circuit opinion, in which the court held that in § 1983 actions, the court should look to state law to determine "the legal consequences of many important relationships, including family relationships." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1244 (7th Cir.1984). The court looked to state law in wrongful death actions to determine whether parents should recover damages for loss of companionship of a child under § 1983. Although the issue in *Bell* concerned the rights of the decedent's father and siblings, the court also addressed the issue of whether a decedent's children are entitled to recover for the loss of their parent. The court determined that there is a clear case for recovery to the child for loss of companionship. *See Mem. Order and Op.*, No. 96 C 8148, J. Williams, Feb. 9, 1998. Therefore, because plaintiffs' Second Amended complaint adequately states that Marsha is the mother of plaintiffs Leigh Ann, Dana and Lara Brewer, plaintiffs' standing is no longer an issue in this action. (2nd Am.Compl.¶ 4.) The court will not revisit its' prior decision on this issue.

of the suit. *Gibson v. Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990) (citing *Triad Assocs., Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir.1989)). A plaintiff fails to state a claim up which relief may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Leahy v. Board of Trustees of Community College Dist. No. 508,* 912 F.2d 917, 921 (7th Cir.1990) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In analyzing the sufficiency of plaintiff's complaint, the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the Plaintiff. *Prince v.. Rescorp Realty,* 940 F.2d 1104, 1106 (7th Cir.1991);*Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323, 1326 (7th Cir.1990). These factual allegations may be contained in the complaint or, under some circumstances, in plaintiff's reply brief in opposition to a motion. *See Early v. Bankers Life and Cas. Co.,* 959 F.2d 75, 78–79 (7th Cir.1992) (accepting as true facts contained in reply to motion to dismiss which clarified conclusions pled in complaint and challenged in motion). This court, however, is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or assign any weight to unsupported conclusions of law." *R.J.R. Services, Inc. v. Aetna Cas. and Sur. Co.,* 895 F.2d 279, 281 (7th Cir. 1989).

On a motion to dismiss for lack of subject matter, the party asserting jurisdiction, the plaintiff in this case, bears the burden of making a prima facie showing that jurisdiction is proper. *Chemical Waste Management v. Sims,* 870 F.Supp. 870, 873 (N.D.Ill.1994). When deciding such a motion, a court may accept affidavits submitted by both parties, but all factual disputes must be resolved in favor of the plaintiff. *McDonald's Corporation v. Bukele,* 960 F.Supp. 1311, 1314 (N.D.Ill. 1997) (citations omitted).

## I. *Count I: Section 1983*

### A. The City: Monell Practice or Policy

The City argues that the court must dismiss Count I of plaintiffs' complaint because it fails to set forth facts sufficient to show a municipal practice or policy. The City also contends that even if plaintiffs could show a municipal practice or policy, they did not plead facts sufficient to show that the practice violated plaintiffs' constitutional rights.

A municipal defendant can be held liable under section 1983 if "a municipal policy or custom caused the constitutional violation." *Leatherman v. Tarrant County Narcotics Unit,* 507 U.S. 163, 165, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To establish a municipal policy that violated federal rights "[t]he plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs of Byran County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). A municipality can violate an individual's constitutional rights in three ways:

(1) an express policy that, when enforced, causes a constitutional deprivation;

(2) 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law'; or

(3) an allegation that the constitutional injury was caused by a person with 'final policy making authority.'

*Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir.1994) (citations omitted). The City argues that plaintiffs failed to allege facts that would support a § 1983 claim under any one of the three theories of municipal liability.

■ The court finds that the facts alleged in the complaint are sufficient to state a Monell policy claim. Plaintiffs in a § 1983 case against a municipality are required to comply only with the conventional standards of notice pleading; they are not required to meet any heightened pleading standard. *Sledd v. Lindsay*, 102 F.3d 282, 288 (7th Cir.1996)(citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). The standard for pleading requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A plaintiff is not required "to specify particular legal theories in a complaint, so long as the facts alleged give adequate notice to the defendant of the basis of the suit." *Wudtke v. Davel*, 128 F.3d 1057, 1061 (7th Cir.1997).

■ In fact, the Seventh Circuit expressly rejected the imposition of heightened pleading requirements in cases governed by the Federal Rules of Civil Procedure, unless required by the rules themselves. *See Jackson v. Marion County*, 66 F.3d 151, 153–54 (7th Cir. 1995) (examining the impact of *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) on pleading requirements.) Federal courts should not read a requirement of fact pleading into the federal rules. *Jackson*, 66 F.3d at 153. As such, courts must apply a liberal notice pleading standard. "A plaintiff in suit in federal court need not plead facts; he can plead conclusions," but "the conclusions must provide the defendant with at least minimal notice of the claim." *Id.*

■ In their complaint, plaintiffs expressly assert that the Officers' actions are attributable to a City policy or custom.

> "One or more of the defendant police officers arrived at Marsha L. Brewer-Stewart's residence by approximately 8:40 p.m. Other defendant police officers arrived shortly after 8:40 p.m. It is believed that defendant police office Montanari, badge # 67, was the police officer in charge of the situation. It is further believed that the conduct of the Naperville Police officers complained of herein was the product of or was governed in whole or in part by policies or practices of the City of Naperville."

(2nd Am.Compl.¶ 13.) The court believes that although it contains conclusory language, this paragraph provides the City with adequate notice.[3] A look at other facts stated in the complaint, makes plain plaintiffs' claim against the City.

Plaintiffs allege several facts which suggest that the City sanctioned or enforced a policy approving the Officers' actions in this case. They first charge that the City of Naperville police "knew well" Stewart's violent criminal propensities and history of mental illness. (2nd. Am.Compl.¶ 11.) Out on bond, Stewart was awaiting trial for his previous attempt to murder Marsha. (Pl. Resp. at 4.) Marsha had made 911 calls to the police help line in the past. (*Id.*) Next, plaintiffs note that "defendant police officers did not make forced entry into the residence until approximately 9:20 p.m." (2nd Am.Compl.¶ 14.) Plaintiffs allege that the entire department had knowl-

---

**3.** While the court recognizes the flaws inherent in plaintiffs' complaint, their attorney's poor draftmanship does not destroy their claim. In considering the defendants' motion to dismiss, the Court will determine whether plaintiffs are "entitled to offer evidence to support [their] claim," and not whether they will ultimately prevail on the merits. *See* Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Mescall v. Burrus*, 603 F.2d 1266, 1268 (7th Cir.1979).

edge of the history of domestic abuse between Marsha and Stewart, yet several Officers (or at least one ranking Officer) concluded that a 911 call from Marsha did not warrant immediate entry by the police. The court believes that these facts sufficiently illustrate plaintiffs' claim that the City maintained a practice which was the moving force behind the Officers' violation of Marsha's constitutional right. *See Hulbert v. Wilhelm*, 120 F.3d 648, 656 (7th Cir.1997) (holding that in § 1983 action against municipality, "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged").

The City next argues that plaintiffs' did not plead facts sufficient to show a legally cognizable violation of their constitutional rights. Plaintiffs do not specify whether they are bringing suit on the basis of a Due Process Clause violation or an Equal Protection violation. They simply state, "The City of Naperville and the defendant police officers acted in willful and wanton disregard for Marsha Brewer–Stewart's safety and violated her civil rights guaranteed under the fourteenth amendment to the United States Constitution." (2nd Am. Compl.¶ 15.) The City argues that under the Supreme Court ruling in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), and subsequent case law, plaintiffs fail to state a claim that the City violated Marsha's due process rights. The court agrees.

Although plaintiffs set forth facts detailing the City's egregious failure to protect Marsha's life, *DeShaney* and its progeny have effectively slammed the door shut on the use of substantive due process as an avenue for redress in these cases. *See DeShaney*, 489 U.S. at 200, 109 S.Ct. 998. Marsha's situation does not fall into the narrowly applied special relationship exception, nor does it appear that defendants

affirmatively placed Marsha in a position of danger she would not have otherwise faced. *See Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1174 (7th Cir. 1997) (explaining that unless plaintiff was in their custody or officers placed plaintiff in danger he would not have otherwise faced, no duty to protect from private violence arises); *Bank of Illinois v. Over*, 65 F.3d 76, 77 (7th Cir.1995) (finding that unless officers are complicit in the violence, "the Constitution does not impose a legally enforceable duty on state officers to protect people from private violence"). Therefore, plaintiffs have not stated a § 1983 claim under the Due Process Clause.

*DeShaney* did not, however, foreclose the use of the Equal Protection Clause in these cases of failure to protect from private violence.[4] Plaintiffs' complaint alleges a § 1983 violation under the Fourteenth Amendment, but does not specify under which Clause of the Fourteenth Amendment the claim is being brought. Therefore, both the Due Process and Equal Protection Clauses may apply. The court disagrees with the City's argument that gender discrimination suits based upon equal protection do not apply to the instant case. The court finds that, in light of *Doe v. Calumet City*, 161 Ill.2d 374, 398, 204 Ill.Dec. 274, 641 N.E.2d 498, 508 (1994), plaintiffs plead sufficient facts to state a § 1983 claim against the City under the Equal Protection Clause.

In *Doe v. Calumet City*, an Illinois Supreme Court case, a police officer who was responding to a 911 call refused to break down plaintiff's door and rescue her children, even after she told him the kids were trapped inside with a man who had just tried to rape her and threatened to kill her and her children. By the time officers entered the apartment, one of the children had been raped and the other choked and threatened. *Doe*, 204 Ill.Dec. 274, 641

---

4. "The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." *See DeShaney*, 489 U.S. at 196 n. 3, 109 S.Ct. 998 (citations omitted).

N.E.2d at 502. Plaintiff alleged that the officer violated her right to equal protection by treating her complaint differently than if it were made by a male. *Id.* 641 N.E.2d at 509. The *Doe* court held that plaintiff stated a cognizable claim of gender discrimination against both the officer and the city. *Id.* "Plaintiffs have plead facts from which a reasonable trier of fact could determine that gender discrimination in general was so settled and widespread that the policymakers had either constructive or actual notice of the conduct." *Id.* 641 N.E.2d at 512. This court believes that plaintiffs in this case have similarly alleged facts sufficient to indicate that the City had notice of the Officers' conduct.

While the court found no Seventh Circuit law speaking directly to this issue, a number of other courts have found potential equal protection violations where police fail to adequately respond to domestic violence complaints lodged by women. *See, Balistreri v. Pacifica Police Dep't,* 901 F.2d 696 (9th Cir.1988); *Watson v. City of Kansas City, KS.,* 857 F.2d 690 (10th Cir. 1988); *Hynson v. City of Chester,* 731 F.Supp. 1236 (E.D.Pa.1990); *Thurman v. City of Torrington,* 595 F.Supp. 1521 (D.Conn.1984). The court finds *Williams v. City of Montgomery,* 21 F.Supp.2d 1360, 1365 (M.D.Ala.1998), particularly instructive. In that case, the estate of a murder victim, killed by her ex-husband, brought a § 1983 claim, alleging violation of deceased's right to equal protection. Police officers failed to act on repeated complaints by Williams that her ex-husband subjected her to domestic violence, harassment, stalking and threats. *See Williams,* 21 F.Supp.2d 1360, 1362–64. Emphasizing the low threshold required to survive a motion to dismiss, the court denied the defendant's motion to dismiss Williams' equal protection claim. *See Id.* at 1365.

This court relies on the same principle and denies defendants' motion to dismiss Count I as it relates to the City. According to plaintiffs, the police department knew about Stewart's history of violence against Marsha. (2nd Am.Compl.¶ 11.) Stewart had been arrested for attempting to murder her and was out on bond. (Pl. Resp. at 4.) Even after Marsha made a 911 call requesting emergency help, upon arriving at the scene, police did not enter her home, but instead waited outside. (Pl. Resp. at 4–5; 2nd Am. Compl. ¶¶ 12–14.) "A complaint need not identify a legal theory; elaboration of both fact and law comes later, in other documents." *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir.1992). In view of the pleading standard, plaintiffs have set forth facts sufficient to state a § 1983 claim on equal protection grounds.

Upon discovery, a number of facts may be uncovered which, collectively, would be sufficient to prove the City authorized a discriminatory practice, in violation of the Equal Protection Clause. Yet it is not until a motion for summary judgment that the court will require evidence to support this equal protection claim. At the summary judgment stage in *Hynson v. City of Chester,* a similar case,[5] the court held that "a plaintiff must proffer sufficient evidence that would allow a reasonable jury to infer that it is the policy or custom of the police to provide less protection to victims of domestic violence than to other victims of violence, that discrimination against women was a motivating factor, and that the plaintiff was injured by a policy or custom." *Hynson v. City of Chester, Legal Dep't,* 864 F.2d 1026, 1027 (3d Cir.1988). However, no discovery has been conducted in this case. Defendants have submitted a motion to dismiss, not a motion for summary judgment. Plaintiffs need only plead facts tending to show that if true, a rea-

---

**5.** In *Hynson v. City of Chester,* plaintiffs alleged violations of the battered woman-decedent's due process rights to life and liberty, as well as the equal protection claim. The police officers in the case refused to arrest the decedent's boyfriend-murderer the day before her murder because the decedent's most recent restraining order had expired. *See Hynson,* 864 F.2d at 1027.

sonable jury could find that (1) the City maintained a practice which results in discrimination against women, (2) that discrimination against women motivated the Officers' and the City's actions and (3) that plaintiffs were significantly injured. The court finds that plaintiffs have set forth sufficient facts to set forth a § 1983 claim against the City on equal protection grounds.

## B. The Officers: Qualified Immunity

■■■ Defendant Officers move to dismiss Count I on grounds of qualified immunity. "Public officials performing discretionary functions are entitled to qualified immunity from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gustafson v. Jones,* 117 F.3d 1015, 1020–21 (7th Cir.1997) quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When defendants raise qualified immunity as an affirmative defense, the court must engage in a two-part inquiry: (1) determine whether plaintiff has asserted a violation of a federal constitutional right and (2) determine whether the constitutional standards implicated were clearly established at the time in question. *See Eversole v. Steele,* 59 F.3d 710, 717 (7th Cir.1995) citing *Kernats v. O'Sullivan,* 35 F.3d 1171, 1176 (7th Cir.1994). Once a defendant pleads qualified immunity, plaintiff has the burden to demonstrate the existence of a clearly established constitutional right. *See Abel v. Miller,* 824 F.2d 1522, 1534 (7th Cir.1987). This requires plaintiff to point to either a closely analogous case or evidence that defendants' conduct is so violative of his or her constitutional right that reasonable officials would know that their conduct was unconstitutional without guidance from the courts. *See Casteel v. Pieschek,* 3 F.3d 1050, 1053 (7th Cir.1993).

■■■ The court has already found that plaintiffs have stated a claim for violation of Marsha's right to equal protection under § 1983. So the issue before the court is whether the law concerning Defendant Officers' conduct was so clear that a reasonable person would have known he was violating plaintiffs' rights by failing to protect Marsha from Defendant Stewart. Plaintiffs argue that the availability of qualified immunity for Officers is a question more properly considered on a motion for summary judgment. While the Seventh Circuit has recognized that "[q]ualified immunity is a legal issue, but it is one which, because of the particularity requirement, is bound up in the facts of a particular case." *Stevens,* 105 F.3d at 1173, citing *Hall v. Ryan,* 957 F.2d 402, 404 (7th Cir. 1992) (citations omitted), no law prevents the court from resolving this issue on a motion to dismiss. *See Harrell v. Cook,* 169 F.3d 428, 430 (7th Cir.1999) (holding that "because qualified immunity is designed to protect defendants from the burden of suit, as well as the burden of liability, it is a question that should be resolved as promptly as possible"). Where defendants raise qualified immunity in a motion to dismiss, "the procedural posture of the case itself assures the absence of factual issues." *Id.*

The *Hynson* court enunciated a standard for granting qualified immunity in these cases. "A police officer loses qualified immunity to a claim that a facially neutral policy is executed in a discriminatory manner only if a reasonable police officer would know that the policy has a discriminatory impact on women, that bias against women was a motivating factor behind adoption of the policy, and that there is no important public interest served by the adoption of the policy." *Hynson v. City of Chester, Legal Dep't,* 864 F.2d 1026, 1027 (3d Cir.1988). Some courts have opted to protect officers and grant them qualified immunity. *See Hynson,* 731 F.Supp. at 1241 (holding that "the particularlized right at issue did not become clearly established until the Third

Circuit's decision" in that case);*Williams*, 21 F.Supp.2d at 1367.

However, unlike the officers in *Williams* and *Hynson*, Defendant Officers in this case could look to case law in Illinois and find that Marsha had a clearly established constitutional right to be treated as any other citizen would after making a 911 call.

In *Doe v. Calumet City*, the Illinois Supreme Court articulated the law Naperville police officers were bound to observe. As one legal scholar recognized, with their decision in *Doe*, the court "joined a handful of other appellate courts in finding that the defendant police department violated the Equal Protection Clause by failing to respond to a perceived domestic assault." Daniel P. Whitmore, *Enforcing the Equal Protection Clause on Behalf of Domestic Violence Victims: The Impact of Doe v. Calumet City* 45 DePaul L.Rev. 123, 126–7 (1995). In addition, while the court knows that an officer's violation of state law alone cannot give rise to a claim under § 1983, it cannot ignore the fact that Defendant Officers' actions appear to be in violation of the Domestic Violence Act of 1986, 750 ILCS 60/102 (West 1992). *See Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Soto v. Flores*, 103 F.3d 1056, 1064 (1st Cir.1997). Section 304 and 305 of the Act set forth the steps law enforcement officers must take to assist victims of abuse and the concomitant liability that follows when they fail to do so.

> "Whenever a law enforcement officer has reason to believe that a person has been abused, neglected, or exploited by a family or household member, the officer shall immediately use all reasonable means to prevent further abuse, neglect, or exploitation ... Any act of omission or commission by any law enforcement

officer acting in good faith in rendering emergency assistance or otherwise enforcing this Act shall not impose civil liability upon the law enforcement officer ... unless the act is a result of willful or wanton misconduct."

*Calloway v. Kinkelaar et al.*, 168 Ill.2d 312, 213 Ill.Dec. 675, 659 N.E.2d 1322, 1327 (1995); 750 ILCS 60/304–305 (West 1992). In light of their duty under the Act, defendant Officers were certainly on notice that their conduct was unlawful. In view of *Doe*, this court finds that Officers were also aware that their deliberate omission to act was in violation of Marsha's clearly established constitutional right.[6] The court, therefore, denies Defendant Officers qualified immunity.

## II. Count II and III: Pendant Jurisdiction

Defendants' only argument regarding Counts II and III is that upon dismissal of the Count I § 1983 claim, the court should not retain jurisdiction of plaintiffs' state law claims. Since the court has denied defendants' motion to dismiss Count I, the court will exercise supplemental jurisdiction over plaintiffs' state claims under 28 U.S.C. § 1367. The City and Officers' motion to dismiss Counts II and III is therefore denied.

## III. Defendant Stewart: Survival Act and Wrongful Death

Defendant Stewart also asks the court to dismiss Counts IV and V for lack of subject matter jurisdiction. Stewart argues that even if the court maintains pendant jurisdiction over plaintiffs' state law claims against the City and Officers, it should not exercise jurisdiction over the state law claims against him. In the alternative,

---

6. The court also believes that the law established in *Lowers v. City of Streator*, put defendants on notice that courts would consider their failure to act in this case violative of Marsha's constitutional rights. Plaintiff in that case brought both a due process and equal protection claim against the city and police officers. The court denied defendants' motion to dismiss § 1983 claim where plaintiff alleged that "defendants' failure to arrest the rapist and to continue the investigation was a result of her being a woman." *Lowers v. City of Streator*, 627 F.Supp. 244, 246–7 (N.D.Ill.1985).

Stewart contends that Counts IV and V should be dismissed for failure to state a claim.

 In a case containing state and federal claims, a district court may exercise supplemental jurisdiction over state law claims when those claims are "so related to [the federal claims] that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Accordingly, judicial power to hear both state and federal claims exists where the federal claim has sufficient substance to confer subject matter jurisdiction on the court, and the state and federal claims derive from a common nucleus of operative facts. *See United Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Myers v. County of Lake*, 30 F.3d 847, 850 (7th Cir.1994), *cert. denied*, 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994). The decision regarding retention of supplemental claims is left to the sound discretion of the district court. *VanHarken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir.1997).

 "To satisfy the 'same case or controversy' requirement, claims which otherwise lack an independent jurisdictional basis must 'revolve [ ] around a central fact pattern' with those claims properly before the court." *Robertazzo v. The Village of Melrose Park*, No. 98 C 3540, 1998 WL 729608, *2 (N.D.Ill. Oct.16, 1998) citing *Lynam v. Foot First Podiatry Centers, P.C.*, 919 F.Supp. 1141, 1148 (N.D.Ill.1996) (citations omitted). The Seventh Circuit has held a court may exercise jurisdiction under § 1367 when state law claims share a "loose factual connection" with a federal claim. *Ammerman v. Sween*, 54 F.3d 423, 424 (citations omitted).

 Plaintiffs' § 1983 claim against the City and Officers do not form the same case or controversy as plaintiffs' claims against Stewart for pain and suffering and wrongful death. The Seventh Circuit, in *Hutchinson on Behalf of Baker v. Spink*, 126 F.3d 895 (7th Cir.1997), held that the link between civil rights claims against county officials' negligent placement and supervision, resulting in child's death in farming accident, and products liability claims against manufacturer of farming equipment was too weak to support exercise of supplemental jurisdiction over products liability claims. *See Hutchinson on Behalf of Baker v. Spink*, 126 F.3d 895, (7th Cir.1997). Much like the plaintiffs in *Hutchinson*, here plaintiffs claim that the City and Officers were willful and wanton and by responding to her 911 call differently than it might a non-domestic abuse call for help, violated Marsha's equal protection rights and at the same time, want the court to exercise supplemental jurisdiction claims against Stewart, a separate defendant for directly causing decedent's death. Plaintiffs' state law claims against Stewart involve a different set of facts, actions and theory of law than their § 1983 claim against the City and Officers. As such, the court does not find the requisite loose factual connection between plaintiffs' state law claims against Stewart and those federal and state law claims against the City and Officers. For this reason, it would be improper to exercise supplemental jurisdiction over plaintiffs' state law claims in Counts IV and V. Therefore, the court grants Stewart's motion to dismiss without prejudice.

Having dismissed Counts IV and V for lack of subject matter jurisdiction, the court need not reach Stewart's alternative arguments that Counts IV and V should be dismissed because plaintiffs fail to state a cognizable claim under law.

### Conclusion

Therefore, for the reasons set forth above, the court denies the City and Officers' motion to dismiss Counts I–III. The court however grants Defendant Stewart's motion to dismiss Counts IV and V for lack of subject matter jurisdiction without prejudice, thus terminating Stewart as a party to this action. The court instructs

remaining parties to discuss settlement prior to the next scheduled court date.